MONTGOMERY Y. PAEK, ESQ., Bar # 10176
ETHAN D. THOMAS, ESQ., Bar # 12874
DIANA G. DICKINSON, ESQ., Bar # 13477
EMIL S. KIM, ESQ., Bar #14894
LITTLER MENDELSON, P.C.
3960 Howard Hughes Parkway, Suite 300
Las Vegas, Nevada 89169-5937
Telephone:  702.862.8800
Fax No.:    702.862.8811
mpaek@littler.com
edthomas@littler.com
ddickinson@littler.com
ekim@littler.com

*Attorneys for Defendant* RENOWN HEALTH

MARK R. THIERMAN, ESQ., Bar # 8285
JOSHUA D. BUCK, ESQ., Bar # 12187
LEAH L. JONES, ESQ., Bar # 13161
JOSHUA R. HENDRICKSON, ESQ., Bar # 12225
THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, Nevada 89511
Telephone: (775) 284-1500
Fax: (775) 703-5027
mark@thiermanbuck.com
josh@thiermanbuck.com
leah@thiermanbuck.com
joshh@thiermanbuck.com

*Attorneys for Plaintiff* EMILY NEVETT

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| EMILY NEVETT, on behalf of herself and all others similarly situated,<br><br>            Plaintiff,<br><br>    vs.<br><br>RENOWN HEALTH, and DOES 1 through 50, inclusive,<br><br>            Defendants. | Case No.: 3:21-CV-00319-RCJ-WGC<br><br>**STIPULATION AND ORDER TO FILE PLAINTIFF'S PROPOSED FIRST AMENDED COMPLAINT** |

Plaintiff EMILY NEVETT, on behalf of herself and all others similarly situated ("Plaintiff"), by and through her counsel of record THIERMAN BUCK, LLP, and Defendant RENOWN HEALTH, by and through their counsel of record LITTLER MENDELSON P.C. (collectively "the Parties"), hereby stipulate and agree that Plaintiff may file with the Court, without further motion, the Proposed First Amended Complaint, a copy of which is attached hereto as **Exhibit A**.

By agreeing to this stipulation, neither Party waives any rights and/or defenses to the claims and/or factual allegations asserted in the Proposed First Amended Complaint, including but not limited to any disputes related to the applicable statute of limitations, relation back to the filing date of the Original Complaint, and/or equitable tolling of the limitations period.

Additionally, and in the interest of judicial economy, the parties also hereby stipulate that Plaintiff will withdraw her Motion to Remand to State Court (ECF No. 6) upon granting of this Stipulation and Order.

Respectfully submitted,

Dated: August 24, 2021
THIERMAN BUCK, LLP

Dated: August 24, 2021
LITTLER MENDELSON, P.C.

/s/ Joshua D. Buck
Mark R. Thierman, Bar No. 8285
Joshua D. Buck, Bar No. 12187
Leah L. Jones, Bar No. 13161
Joshua R. Hendrickson, Bar No. 1225

/s/ Ethan D. Thomas
Montgomery Y. Paek, Bar # 10176
Ethan D. Thomas, Bar # 12874
Diana G. Dickinson, Bar # 13477
Emil S. Kim, Bar #14894

*Attorneys for Plaintiff EMILY NEVETT on behalf of themselves and All others similarly situated*

*Attorneys for Defendant RENOWN HEALTH.*

///

///

## ORDER

The Parties' stipulation to allow Plaintiff to file a First Amended Complaint is hereby GRANTED. Plaintiff shall file the First Amended Complaint within seven (7) days of entry of this Order.

IT IS SO ORDERED.

DATED: August 25, 2021

*William G. Cobb*
U.S. Magistrate Judge

# EXHIBIT A

Proposed First Amended Complaint

# EXHIBIT A

1  Mark R. Thierman, Nev. Bar No. 8285
   mark@thiermanbuck.com
2  Joshua D. Buck, Nev. Bar No. 12187
   josh@thiermanbuck.com
3  Leah L. Jones, Nev. Bar No. 13161
   leah@thiermanbuck.com
4  THIERMAN BUCK LLP
   7287 Lakeside Drive
5  Reno, Nevada 89511
   Tel. (775) 284-1500
6  Fax. (775) 703-5027

7  ATTORNEYS FOR PLAINTIFFS
   AND THE PUTATIVE CLASSES
8

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| EMILY NEVETT and BONNIE NOBLE, on behalf of themselves and all other similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>RENOWN HEALTH, and DOES 1 through 50, inclusive,<br><br>Defendant(s). | Case No.: 3:21-cv-00319-RCJ-WGC<br><br>**FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**(EXEMPT FROM ARBITRATION PURSUANT TO N.A.R. 5)**<br><br>1) Failure to Pay Overtime in Violation of 29 U.S.C. § 207;<br><br>2) Failure to Compensate for All Hours Worked in Violation of NRS 608.140 and 608.016;<br><br>3) Failure to Pay Overtime in Violation of NRS 608.140 and 608.018; and<br><br>4) Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.140 and 608.020-050.<br><br>**JURY TRIAL DEMANDED** |

COME NOW Plaintiffs EMILY NEVETT and BONNIE NOBLE ("Plaintiffs"), on behalf of themselves and all other similarly situated and typical persons, and allege the following:

All allegations in this Complaint are based upon information and belief except for those allegations that pertain to the Plaintiffs named herein and their counsel. Each allegation in this

Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over the federal claims alleged herein pursuant to the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 216(b) which states: "An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

2. This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367 because the state law claims alleged herein all arise out of the same transaction and occurrence, i.e. the failure to properly pay all wages due—and there is no conflict between the procedures applicable to the FLSA and State law claims. *Integrity Staffing Solutions, Inc.*, 2013 U.S. App. LEXIS 7397 (9th Cir. Nev. Apr. 12, 2013) ("In sum, we agree with the other circuits to consider the issue that the fact that Rule 23 class actions use an opt-out mechanism while FLSA collective actions use an Opt-in mechanism does not create a conflict warranting dismissal of the state law claims.")

3. Venue is proper in this Court because one or more of the Defendants named herein maintains a principal place of business or otherwise is found in this judicial district and many of the acts complained of herein occurred in Washoe County, Nevada, which is located within this district.

## PARTIES

4. Plaintiff EMILY NEVETT is a natural person who was employed by Defendant within the State of Nevada from July 2018 to October 2019.

5. Plaintiff BONNIE NOBLE is a natural person who was employed by Defendant within the State of Nevada from on or about 2015 to August 2020.

6. Defendant RENOWN HEALTH ("Renown" or "Defendant") is a Nevada Nonprofit Corporation with its principle place of business at 50 W. Liberty Street, 11th Floor, Reno, Nevada 89502.

7. The identity of DOES 1-50 is unknown at this time, and this Complaint will be amended at such time when the identities are known to Plaintiffs. Plaintiffs are informed and believe that each of the Defendants sued herein as DOE is responsible in some manner for the acts, omissions, or representations alleged herein and any reference to "Defendant," "Defendants," or "Renown" herein shall mean "Defendants and each of them."

## FACTUAL ALLEGATIONS

A. **The Parties**

8. Renown is a not-for-profit corporation that operates primarily in Washoe County.

9. Plaintiff NEVETT was employed by Renown as a Registered Nurse (RN) in the medical-surgery department.

10. Plaintiff NEVETT was an hourly paid non-exempt patient care union employee and earned $30.62 per hour at the time of her termination. In addition to her hourly rate of pay, Plaintiff NEVETT, and all other similarly situated individuals, also received a non-discretionary PACE bonus that was based on employee earnings during the preceding year. Plaintiff NEVETT received one such PACE bonus during her employment with Defendant in the amount of $1,514.74. Upon information and belief, this bonus was not included in the regular rate of pay for overtime payment calculations for Plaintiff NEVETT or any other member of the putative class members identified below.

11. Plaintiff NEVETT's regular schedule was three (3) shifts a week, for 12.5 hours each shift, from 6:45 a.m. to 7:15 p.m. She was also required to be available for 1 additional on call shift per month. In addition to her regularly scheduled shifts and her required on call time, Plaintiff NEVETT also routinely worked extra shifts and extra hours.

12. Plaintiff NOBLE worked at the Renown Rehabilitation Hospital in Reno, Nevada from about 2015 to 2019. While employed at the Renown Rehabilitation Hospital, she worked as a non-exempt, hourly paid Certified Nursing Assistant from about 2015 – 2018 and from about

- 3 -
FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

2018 to 2019, she worked as a non-exempt, hourly paid Unit Clerk. These were non-union positions. Plaintiff NOBLE worked at the Renown Regional Medical Center from about 2019 to about August 2020 as a non-exempt, hourly paid Certified Nursing Assistant. This was also a non-union position.

13. At the end of her employment with the Renown Regional Medical Center, Plaintiff NOBLE earned approximately $16.40 per hour.

14. Plaintiff NOBLE's regular schedule at the Renown Rehabilitation Hospital was three 12.5 hour shifts per week. Plaintiff NOBLE's regular schedule at the Renown Regional Medical Center was five 8.5 hour shifts per week. In addition to her regularly scheduled shifts, Plaintiff NOBLE also routinely worked extra shifts and extra hours.

**B.     Renown's Timekeeping and Electronic Medical Records Systems**

15. Defendant maintained a timekeeping policy whereby all non-exempt hourly paid employees would clock in and out via the KRONOS timekeeping system. The clock in/out times were then used to calculate the hours worked for the payment of wages. An employee would not be compensated for time worked if he/she was not clocked-in to KRONOS.

16. Defendant maintained an electronic medical record (EMR) system called EPIC, whereby Plaintiffs and all other patient care employees would record and document any and all patient care notes and records. The EPIC system records the specific time in which Plaintiffs and all other patient care employees enter data into the system.

17. Defendant engaged Plaintiffs and all others similarly situated to make entries into the EPIC system while at the employer's place of employment. It is an integral, indispensable and legally necessary to the performance of the job of providing patient care that patient care employees make these entries into the EPIC system, which was also an essential part of the medical billing process as well.

**C.     A Comparison Between KRONOS and EPIC Data Demonstrates That Defendant Suffered and/or Permitted Patient Care Employees To Perform Work Without Compensation**

18. Plaintiffs performed work for which they were not compensated.

- 4 -
FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

19. A comparison between the KRONOS and EPIC data demonstrates and/or will demonstrate that Plaintiffs interacted with the EPIC system when they were either off-the-clock and/or during their meal break; therefore, Plaintiffs were not compensated for all the hours that they actually worked.

20. Defendant and Defendant's agents were aware that Plaintiffs and all other similarly situated employees were working without compensation because employees were required to be physically present at Defendant's facility and the EPIC system recorded the time when Plaintiffs and similarly situated employees made entries. Defendant's agents would routinely observe Plaintiffs and all others similarly situated making these patient chart EPIC entries "off the clock" such as during lunch breaks and before and after scheduled shifts.

21. Despite knowing that Plaintiffs and other similarly situated individuals were performing work off-the-clock and without compensation, Defendant failed to prevent the performance of such work. Defendant suffered and permitted Plaintiffs to continue doing uncompensated work that they were engaged to perform.

**D. Defendant Automatically Deducted 30-Minutes For Meal Periods Without Verification That Employees Received A Full Uninterrupted 30-Minute Meal Break ("Auto Deduct Policy")**

22. Plaintiffs and other similarly situated employees did not clock out for meal periods. Instead, Defendant maintained a policy whereby 30-minutes would be automatically deducted from the hours worked each shift that an employee worked ("Auto Deduct Policy"). In other words, when Plaintiffs were scheduled for, and worked, 12.5 hour shifts, Plaintiffs were only compensated for 12 hours of work; when Plaintiffs were scheduled for, and worked, 8.5 hour shifts, they were only compensated for 8 hours of work.

23. Defendant deducted 30-minutes for a meal period without verifying that Plaintiffs and other similarly situated employees were able to take a lunch break. Since the KRONOS data shows that an employee was clocked in/out for the full shift, and that Defendant automatically took back 30-minutes of those work hours and did not pay employees for that time, Defendant bears the burden of confirming that Plaintiffs and other similarly situated employees did not

perform any work during the 30-minutes that were removed from employee time records. If Defendant cannot meet its burden that an employee did not perform any compensable work during those 30-minutes, it must compensate these employees at their applicable wage rate for the 30-minutes that Defendant manipulated from employees' pay.

24. Plaintiffs were not able to take at least a 30-minute uninterrupted lunch. A comparison between the KRONOS data and the EPIC data demonstrate that Plaintiffs were not fully relieved of duty for their lunch break that was automatically deducted from their pay. Furthermore, Plaintiffs were always required to carry a Renown-provided telephone/radio with them, and respond to any calls, during any attempted meal break and was not allowed to leave Defendant's premises for a meal break. Accordingly, Plaintiffs are entitled to recover wages at their applicable wage rate that were automatically deducted by Defendant for themselves and all similarly situated employees.

E. **Defendant Did Not Include On-Call Shift Hours Worked Into The Weekly Overtime Computation ("On-Call Overtime Policy")**

25. Defendant paid Plaintiff NEVETT and all other similarly situated employees a premium when they worked an on-call shift. The premium was 1 ½ times an employees' regular hourly rate of pay ("On-Call Premium").

26. Plaintiff NEVETT was required to be available for at least one (1) on call shift per month, in addition to her normal schedule of three (3), twelve and a half (12.5) hour shifts.

27. When Plaintiff NEVETT worked an on-call shift, Defendant did not compensate Plaintiff NEVETT at her overtime rate of 1 ½ times her regular rate of pay when she worked over 40 hours in that workweek. Instead, Defendant only compensated Plaintiff NEVETT her regular base hourly rate for her regular shifts, in the amount of $1,102.32 ($30.62 x 36 hours), and her regular base On-Call Premium for her on call hours in the amount of $551.16 ($45.93 x 12 hours).

28. Plaintiff NEVETT's regular rate for the workweeks that she works an on call shift is $34.45. (Her total monetary renumeration of $1,653.48, divided by total hours worked of 48 hours.) Thus, her overtime rate is $51.68. Here total wages should have been paid as follows:

$1,791.44 ($1,378 in regular rate wages for 40 regular hours and $413.44 in overtime wages for 8 overtime hours).  The difference between what Defendant paid Plaintiff NEVETT ($1,653.48) and what Plaintiff NEVETT is owed ($1,791.44) is $137.96.

29. During the course of her employment with Defendant, Plaintiff NEVETT worked approximately 10 on call shifts.  Each on-call shift that she worked was in addition to her regularly scheduled shifts so that Plaintiff NEVETT incurred overtime hours during those workweeks that she worked an on-call shift.  Accordingly, Plaintiff NEVETT is owed an estimated amount of $2,069.40 in unpaid overtime wages.

30. Defendant's overtime pay compensation scheme was not unique to Plaintiff NEVETT.  Defendant paid all employees who worked on-call shifts in the same fashion. Defendant similarly failed to compensate all similarly situated employees at the correct overtime rate when they worked over 40 hours in a workweek.

## CLASS ACTION ALLEGATIONS

31. Plaintiffs reallege and incorporate by this reference all the paragraphs above in this Complaint as though fully set forth herein.

32. Plaintiffs bring this action on behalf of themselves and all other similarly situated and typical employees as both a collective action under the FLSA and a class action under Nevada wage-hour laws.

### FLSA Classes

33. Plaintiffs bring this action on behalf of themselves and the following **FLSA Classes** of similarly situated individuals employed by Defendant:

    A.    **FLSA Off-the-Clock Class:** All nonexempt hourly paid persons employed by Defendant who interacted with EPIC off the clock (as demonstrated by the comparison between the EPIC and KRONOS time data) at any time during the relevant time period alleged herein.

    B.    **FLSA Auto Deduct Class:** All nonexempt hourly paid persons employed by Defendant who were subject to Defendant's Auto Deduct Meal Break policy at any time during the relevant time period alleged herein.

      C.    **FLSA On-Call Overtime Class:** All nonexempt hourly paid persons employed by Defendant who were subject to Defendant's On-Call Overtime policy at any time during the relevant time period alleged herein.

34. With regard to the conditional certification mechanism under the FLSA, Plaintiffs are similarly situated to those they seek to represent for the following reasons, among others:

35. Defendant employed Plaintiffs as hourly-paid employees who did not receive their full wages for all the hours that they worked, and, where applicable, their overtime premium pay at one and one-half times the regular rate of pay for all hours worked over forty (40) hours in a workweek.

36. Plaintiffs' situation is similar to those they seek to represent because Defendant failed to pay Plaintiffs and all other FLSA Class Members for all time they were required to work, but with the knowledge, acquiescence and/or approval (tacit as well as expressed) of Defendant's managers and agents.

37. Common questions exist as to whether Plaintiffs and all other FLSA Class Members worked off the clock and without compensation.

38. Upon information and belief, Defendant employs, and has employed, in excess of 1,000 FLSA Class Members within the applicable statute of limitations.

39. Plaintiffs have signed or will sign a Consent to Sue form to be filed in the court shortly.

40. Plaintiffs bring this action on behalf of themselves and the following **Nevada Classes** of similarly situated individuals employed by Defendant:

      A.    **Nevada Off-the-Clock Class:** All nonexempt hourly paid persons employed by Defendant in the state of Nevada who interacted with EPIC off the clock (as demonstrated by the comparison between the EPIC and KRONOS time data) at any time during the relevant time period alleged herein.

          1.  **Non-Union Subclass**: All members of the Nevada Off-the-Clock Class who are not covered by a collective bargaining agreement.

B. **Nevada Auto Deduct Class:** All nonexempt hourly paid persons employed by Defendant in the state of Nevada who were subject to Defendant's Auto Deduct Meal Break policy at any time during the relevant time period alleged herein.

   1. **Non-Union Subclass**: All members of the Nevada Auto Deduct Class who are not covered by a collective bargaining agreement.

C. **Continuation Wage Class:** All members of the FLSA and/or Nevada Classes who are former employees at any time during the relevant time period alleged herein.

41.   Class treatment is appropriate in this case for the following reasons:

A.   <u>The Class is Sufficiently Numerous</u>: Upon information and belief, Defendant employs, and has employed, in excess of 1,000 Class Members within the applicable statute of limitations.  Because Defendant is legally obligated to keep accurate payroll records, Plaintiffs allege that Defendant's records will establish the members of the Class as well as their numerosity.

B.   <u>Common Questions of Law and Fact Exist</u>: Common questions of law and fact exist and predominate as to Plaintiffs and Class Members, including, without limitation:

   1) Whether Defendant failed to compensate Plaintiffs and members of the Off-the-Clock Class for all the hours they worked, as demonstrated by the difference between the EPIC and KRONOS data;

   2) Whether Defendant can prove that Plaintiffs and members of the Auto Deduct Class took an uninterrupted 30-minute meal period for each and every shift that Defendant deducted 30-minutes from their wages; and

   3) Whether Defendant failed to pay members of the Continuation Wage Class all their wages due and owing at the time of termination.

C.   <u>Plaintiffs' Claims are Typical to Those of Fellow Class Members</u>: Defendant directed, suffered and/or permitted Plaintiffs to perform work without compensation; Plaintiffs were the victims of Defendant's Auto Deduct policy whereby

Defendant deducted 30-minutes from their wages even though they were never authorized and/or permitted to take a full 30-minute uninterrupted break; and, as a result of the federal and state wage-hour violations set forth herein, Plaintiffs were not compensated their full wages due and owing to them at the time of their termination of employment. Because Plaintiffs are the victims of all of the wrongs committed by Defendant as all members of the Classes that they seek to represent, their claims are typical.

D. <u>Plaintiffs are Adequate Representatives of the Classes</u>: Plaintiffs will fairly and adequately represent the interests of Class Members because Plaintiffs are members of the Classes, they have common issues of law and fact with all members of the Classes, and their claims are typical to other Class Members.

E. <u>A Class Action is Superior/Common Claims Predominate</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy, because individual joinder of all members of the Class is impractical. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense. Furthermore, the expenses and burden of individualized litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

## FIRST CAUSE OF ACTION

**Failure to Pay Overtime Wages in Violation of the FLSA, 29 U.S.C. § 207**

(On Behalf of Plaintiffs and all members of the FLSA Classes Against Defendant)

42. Plaintiffs reallege and incorporate by reference all the paragraphs above in the Complaint as though fully set forth herein.

43. 29 U.S.C. Section 207(a)(1) provides as follows: "Except as otherwise provided in the section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged

in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

44. By failing to compensate Plaintiffs and FLSA Class Members for all the time they were suffered and/or permitted to work as described above, Defendant has failed to pay Plaintiffs and FLSA Class Members overtime for all hours worked in excess of forty (40) hours in a week in violation of 29 U.S.C. Section 207(a)(1).

45. Wherefore, Plaintiffs demand for themselves and for all others similarly situated, that Defendant pay Plaintiffs and FLSA Class Members one and one-half times their regular hourly rate of pay for all hours worked in excess of forty (40) hours a week during the relevant time period together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

## SECOND CAUSE OF ACTION

**Failure to Pay Wages for All Hours Worked Under Nevada Law**

(On Behalf of Plaintiffs and the Nevada Off-the-Clock and Nevada Auto Deduct Classes Against Defendant)

46. Plaintiffs reallege and incorporate by this reference all the paragraphs above in this Complaint as though fully set forth herein.

47. NRS 608.140 provides that an employee has a private right of action for unpaid wages.

48. Nevada Revised Statutes ("NRS") 608.016 entitled, "Payment for each hour of work; trial or break-in period not excepted" states that: "An employer shall pay to the employee wages for each hour the employee works. An employer shall not require an employee to work without wages during a trial or break-in period."

49. Nevada Administrative Code ("NAC") 608.115(1), entitled "Payment for time worked. (NRS 607.160, 608.016, 608.250)" states: "An employer shall pay an employee for all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee."

50. By failing to compensate Plaintiffs and Nevada Off-the-Clock Class Members for all the time they were suffered and/or permitted to work, as demonstrated by the comparison between EPIC and KRONOS time data, Defendant failed to pay Plaintiffs and Nevada Off-the-Clock Class Members for all hours they worked.

51. By maintaining the Auto Deduct policy, whereby Defendant deducted 30-minutes of wages from Plaintiffs and Nevada Auto Deduct Class Members' pay without verification that Plaintiffs and Auto Deduct Class Members took a full, duty free, uninterrupted meal period, Defendant failed to pay Plaintiffs and Nevada Auto Deduct Class Members for all hours that they worked.

52. Wherefore, Plaintiffs demand for themselves and for all members of the Nevada Off the Clock and Nevada Auto Deduct Classes, the payment of all regular rate wages owed for three years immediately preceding the filing of this complaint until the date of judgement after trial, together with attorneys' fees, costs, and interest as provided by law.

## THIRD CAUSE OF ACTION

**Failure to Pay Overtime Wages for All Hours Worked Under Nevada Law**

(On Behalf of Plaintiff NOBLE and the Nevada Off-the-Clock Non-Union Subclass and Nevada Auto Deduct Non-Union Subclass Against Defendant)

53. Plaintiffs reallege and incorporate by this reference all the paragraphs above in this Complaint as though fully set forth herein.

54. NRS 608.140 provides that an employee has a private right of action for unpaid wages.

55. NRS 608.018(1) provides as follows:

> An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works:  (a) More than 40 hours in any scheduled week of work; or (b) More than 8 hours in any workday unless by mutual agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.

56. NRS 608.018(2) provides as follows:

> An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works more than 40 hours in any scheduled week of work.

57. By failing to compensate Plaintiff NOBLE and Nevada Off-the-Clock Non-Union Subclass Members for all the overtime hours they were suffered and/or permitted to work, as demonstrated by the comparison between EPIC and KRONOS time data, Defendant failed to pay Plaintiff NOBLE and Nevada Off-the-Clock Non-Union Subclass Members the overtime premium of 1 ½ times their regular rate of pay for all hours worked over 8 hours in a workday and/or 40 in a workweek.

58. By maintaining the Auto Deduct policy, whereby Defendant deducted 30-minutes of wages from Plaintiff NOBLE and Nevada Auto Deduct Non-Union Subclass Members' pay without verification that Plaintiff NOBLE and Nevada Auto Deduct Non-Union Subclass Members took a full, duty free, uninterrupted meal period, Defendant failed to pay Plaintiff NOBLE and Nevada Auto Deduct Non-Union Subclass Members the overtime premium of 1 ½ times their regular rate of pay for all hours worked over 8 hours in a workday and/or 40 in a workweek.

59. Wherefore, Plaintiff NOBLE demands for herself, and for all members of the Nevada Off the Clock Non-Union Subclass and Nevada Auto Deduct Non-Union Subclass, payment by Defendant at 1 ½ times their regular rate of pay for all overtime pay owed for three years immediately preceding the filing of this complaint until the date of judgement after trial, together with attorneys' fees, costs, and interest as provided by law.

## FOURTH CAUSE OF ACTION

**Failure to Timely Pay All Wages Due and Owing Under Nevada Law**

(On Behalf of Plaintiffs and the Continuation Wage Class Against Defendant)

60. Plaintiffs reallege and incorporate by this reference all the paragraphs above in this Complaint as though fully set forth herein.

61. NRS 608.140 provides that an employee has a private right of action for unpaid wages.

62. NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

63. NRS 608.040(1)(a-b), in relevant part, imposes a penalty on an employer who fails to pay a discharged or quitting employee: "Within 3 days after the wages or compensation of a discharged employee becomes due; or on the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid for 30-days, whichever is less."

64. NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default."

65. By failing to pay Plaintiffs and all members of Continuation Wage Class for all hours worked in violation of federal and state law, Defendant has failed to timely remit all wages due and owing to Plaintiffs and all members of Continuation Wage Class.

66. Despite demand, Defendant willfully refuses and continues to refuse to pay Plaintiffs and all members of the Continuation Wage Class.

67. Wherefore, Plaintiffs demand 30 days wages under NRS 608.140 and 608.040, and an additional 30 days' wages under NRS 608.140 and 608.050, for all members of the Nevada Continuation Wage Class, together with attorneys' fees, costs, and interest as provided by law.

## JURY DEMAND

Plaintiffs hereby respectfully demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore Plaintiffs, individually and on behalf of all Class Members and all others similarly situated, pray for relief as follows relating to their collective and class action allegations:

1. For an order conditionally certifying the action under the FLSA and providing notice to all FLSA Class Members so they may participate in the lawsuit;
2. For an order certifying this action as a class action on behalf of the proposed Classes;
3. For an order appointing Plaintiffs as the Representatives of their respective Classes and their counsel as Class Counsel;
4. For damages according to proof for regular rate or minimum rate pay, whichever is higher, for all hours worked under both federal and state law;
5. For damages according to proof for overtime compensation for all overtime hours worked under both federal and state law;
6. For liquidated damages;
7. For 60-days of continuation wages;
8. For interest as provided by law at the maximum legal rate;
9. For reasonable attorneys' fees authorized by statute;
10. For costs of suit incurred herein;
11. For pre-judgment and post-judgment interest, as provided by law, and
12. For such other and further relief as the Court may deem just and proper.

DATED: August 24, 2021                THIERMAN BUCK LLP
                                      */s/Joshua D. Buck*
                                      Mark R. Thierman
                                      Joshua D. Buck
                                      Leah L. Jones

                                      *Attorneys for Plaintiffs*

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com  www.thiermanbuck.com