UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EMILY NEVETT and BONNIE NOBLE, on behalf of themselves and all other similarly situated individuals,<br><br>    Plaintiffs,<br><br>v.<br><br>RENOWN HEALTH, *et al.*,<br><br>    Defendants. | Case No. 3:21-cv-00319-RCJ-CSD<br><br>**ORDER** |

Plaintiffs Emily Nevett and Bonnie Noble allege, in their Second Amended Complaint (ECF No. 9) that their former employer, Defendant Renown Health (Renown), failed to properly pay them overtime wages as required by the Fair Labor Standards Act (FLSA), 29 U.S.C § 207, and state law, Nev. Rev. Stat. § 608.018.  They also allege Renown failed to pay them for all time worked as required by Nev. Rev. Stat. § 608.016 and failed to pay them all wages due and owing when they stopped working for Renown as required by Nev. Rev. Stat. § 608.020.  Renown now moves to dismiss Plaintiffs' First, Second, and Third Causes of Action in their Second Amended Complaint for failure to state a colorable claim.  ECF No. 42.  Plaintiffs oppose the motion.  ECF No. 43.  Having considered the allegations of the Second Amended Complaint and the arguments of the parties, the Court will grant the motion in part and deny it in part as follows.  The Court will provide Plaintiffs one final opportunity to amend the dismissed claims.

**I. PROCEDURAL HISTORY**

Nevett initiated this matter in state court in April 2020, as a class action suit against Renown, alleging 3 state law claims for failure to pay overtime, failure to compensate for all hours worked, and failure to pay wages due and owing.  In June 2021, Renown moved for partial summary

judgment. In response, Nevett moved to amend her complaint. Before Nevett was granted leave to amend, Renown removed the matter to this Court. Nevett moved to remand the litigation back to state court. The parties then stipulated that Nevett could file her proposed First Amended Complaint, and Nevett withdrew her motion to remand. The First Amended Complaint both added Noble as a plaintiff and added the FLSA claim as a collective action.

Renown moved to dismiss the First Amended Complaint. ECF No. 13. Plaintiffs opposed the motion. ECF No. 16. The Court granted the motion in part, denied it in part, and granted Plaintiffs leave to file an amended complaint to cure the deficiencies of their dismissed claims.

Plaintiffs filed the instant Second Amended Complaint. ECF No. 39. Renown now moves to dismiss the First, Second, and Third Causes of Action. ECF No. 42. Plaintiffs oppose the motion. ECF No. 43.

## II. BACKGROUND

Nevett worked as a registered nurse for Renown from July 2018 to October 2019. Noble worked for Renown as a certified nursing assistant and as a unit clerk from 2015 to about August 2020.

Renown used a time-keeping system known as "KRONOS" by which employees would clock in at the beginning of their shift and clock out at the end their shift. Employees would not clock out for meal breaks (and thus would not clock in at the end of a meal break). Rather, in computing the hours worked by an employee for each shift, Renown would deduct 30 minutes for the meal break. Renown did not verify whether an employee had taken a meal break.

During meal breaks, Plaintiffs were required to carry a Renown-owned telephone or radio, to respond to any calls, and were not permitted to leave Renown's premises.

As part of their duties, Plaintiffs documented patient care notes and records in Renown's electronic medical records system, known as "EPIC." The EPIC system would record the specific

time that Plaintiffs entered data into the system. Plaintiffs allege that this time stamp in EPIC would, if compared to the KRONOS time records, show that they entered data into the EPIC system during meal breaks and when they were not clocked into the KRONOS system, i.e., when they were off-the-clock. Nevett alleges she worked in EPIC while not clocked into KRONOS on July 25, 2018. Noble alleges she worked in EPIC while not clocked into KRONOS "when she was the only unit clerk the first few weeks of 2018."

Nevett had a regular schedule of three 12.5-hour shifts each week. For each shift, Renown compensated Nevett for 12 hours of work after deducting 30 minutes for the meal break. In addition to her regular shifts, she was also required to work a 12-hour on-call shift once each month. She alleges she worked approximately 10 on-call shifts during her employment.[1] Nevett further alleges working more than 40 hours in thirteen specific workweeks, which she identifies in paragraph 13 of the Second Amended Complaint.[2]

Noble initially had a regular schedule of three 12.5-hour shifts each week. Beginning sometime in 2019, Noble had a regular schedule of five 8.5-hour shifts each week. As with Nevett, for each shift Renown compensated Noble for 12 hours of work (for the 12.5-hour shifts) and 8 hours of work (for the 8-hour shifts) after deducting 30 minutes for the meal break. Noble does not allege any specific workweek in which she worked more than 40 hours.

Noble and Nevett each allege they "regularly and routinely worked through" their meal breaks "in order to complete work tasks including charting in the EPIC system, caring for patients,

---

[1] Nevett identifies the specific dates of these on-call shifts in paragraph 12 of the Second Amended Complaint. ECF No. 39 at 4.

[2] The Court notes Nevett has *not* alleged a total of 23 different workweeks in which she worked in excess of 40 hours. Rather, some of the weeks she that alleges she worked on-call in addition to her regular shifts, as alleged in paragraph 12, are the same weeks that she alleges she worked more than 40 hours, as alleged in paragraph 13.

and/or taking calls on the Renown provided telephone/radio specific to patients under [their] care." Nevett alleges specifically recalling working during her meal break on September 6, 2018, February 4, 2019, June 24, 2019, and August 16, 2019. Noble alleges specifically recalling working during her meal break on May 19, 2019. Both allege that they were not compensated for working through their respective meal breaks on the identified dates.

Nevett further alleges that she received a non-discretionary bonus of $1,514.74 that was based upon her employee earnings during the preceding year. She alleges this bonus payment was not included in calculating her regular rate of pay for overtime payment calculations.

Nevett further alleges that her regular rate of pay for a regular shift was $30.62 per hour. She alleges her regular base pay for her on-call shift was $45.93 per hour. She alleges that, for the weeks she worked an on-call shift, she was actually paid a total of $1,653.48 (representing 36 hours at $30.62 and 12 hours at $45.93). Nevett thus alleges that her regular rate of pay for weeks that she worked an on-call shift was $34.45 ($1,653.48 divided by 48 hours) and the overtime rate during such weeks was $51.68. Accordingly, she calculates that she should have been paid $1,791.44 (40 hours at $34.45 plus 8 hours at $51.68); that is, she alleges she was underpaid by $137.96 in weeks that she worked an on-call shift in addition to her 3 regular shifts.

Noble alleges that, when she ceased working for Renown, she was being paid approximately $16.40 per hour.

**III. LEGAL STANDARDS**

The defendant's motion to dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(6), challenges whether the plaintiff's complaint states "a claim upon which relief can be granted." In ruling upon this motion, the court is governed by the relaxed requirement of Rule 8(a)(2) that the complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." As summarized by the Supreme Court, a plaintiff must allege sufficient factual matter, accepted as

true, "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *Landers v. Quality Communications, Inc.*, 771 F.3d 638, 641 (9th Cir. 2015). Nevertheless, while a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, *Landers*, 771 F.3d at 642. In deciding whether the factual allegations state a claim, the court accepts those allegations as true, as "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Further, the court "construe[s] the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).

However, bare, conclusory allegations, including legal allegations couched as factual, are not entitled to be assumed to be true. *Twombly*, 550 U.S. at 555, *Landers*, 771 F.3d at 641. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. Thus, this Court considers the conclusory statements in a complaint pursuant to their factual context.

To be plausible on its face, a claim must be more than merely possible or conceivable. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. (citing Fed. R. Civ. P. 8(a)(2)). Rather, the factual allegations must push the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Thus, allegations that are consistent with a claim, but that are more likely explained by lawful behavior, do not plausibly establish a claim. *Id*. at 567.

"[A]t a minimum, a plaintiff asserting a violation of the FLSA overtime provisions must allege that she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week." *Landers*, 771 F.3d at 645.

## IV. DISCUSSION

### A. First Cause of Action -- FLSA Claim for Overtime Hours Worked in a Given Week

Nevett alleges that she regularly worked three 12.5-hour shifts every workweek. Noble alleges that when she began working for Renown she regularly worked three 12.5-hour shifts each workweek and that, at unidentified date sometime in 2019, she began working five 8.5-hour shifts during a workweek. They further allege that, for each shift, Renown automatically deducted 30 minutes for meal breaks. That is, Plaintiffs were paid for 12 hours work during each 12.5-hour shift, and Noble was paid for 8 hours of work during each 8.5-hour shift. Plaintiffs also allege that they were required to carry a Renown-owned telephone or radio during meal breaks, to remain on Renown property during meal breaks, and to respond to any calls that occurred during meal breaks.

Nevett alleges specifically recalling working during her meal break on September 6, 2018, February 4, 2019, June 24, 2019, and August 16, 2019. Noble alleges specifically recalling working during her meal break on May 19, 2019.

Nevett alleges she worked in EPIC while not clocked into KRONOS on July 25, 2018. Noble alleges she worked in EPIC while not clocked into KRONOS "when she was the only unit clerk the first few weeks of 2018.

Plaintiffs again appear to argue that, while Renown automatically deducted 30 minutes from each shift for their meal break, they were never provided a bona fide meal break. Accordingly, an initial issue in considering whether Plaintiffs have stated an FLSA claim is whether they sufficiently alleged facts raising a plausible inference that they were never provided a bona fide meal break for

any shift. The Court finds that Plaintiffs have not met their burden of alleging facts showing that their meal breaks were not bona fide.

Implicit in Plaintiff's allegations is that they were provided a 30-minute meal break each shift. Plaintiffs argue this was not a bona fide meal break because they were required to carry a Renown-owned telephone or radio, were required to respond to calls, and were not permitted to leave Renown's premises. To be a bona fide meal break, "the employee must be completely relieved from duty for the purposes of eating regular meals." 29 C.F.R. 785.19(a). "It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period." 29 C.F.R. 785.19(b). Plaintiffs cite solely to the language of this regulation as establishing that they have sufficiently alleged that the meal breaks were not bona fide.

While the regulation is stated in absolute terms—completely relieved and completely freed from duties—the courts and even the Department of Labor have applied a more practical construction to this regulation. *See, for example, Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 64 (2nd Cir. 1997) ("To be consistent with the FLSA's use of the term 'work' as construed in *Armour* [*& Co. v. Wantock*, 323 U.S. 126 (1944)] and *Skidmore* [*v. Swift*, 323 U.S. 134 (1944)], we believe § 785.19 must be interpreted to require compensation for a meal break during which a worker performs activities predominately for the benefit of the employer").

For purposes of this motion, the Court accepts as true Plaintiffs' allegations that they were required to remain on premises during meal breaks.[3] The remain-on-premises requirement does not, of itself, cause a meal break to not be bona fide. Rather, § 785.19(b) expressly recognizes that a remain-on-premises requirement can be consistent with bona fide meal breaks. Plaintiffs' additional allegations that they were also required to carry a Renown-owned telephone or radio and to respond

---

[3] The Court assumes that the alleged meal break requirements applied to every meal break.

7

to any calls does not raise a plausible inference that, during their meal breaks, Plaintiffs were performing activities predominately for the benefit of Renown.

Considered as a whole, Renown's requirements that Plaintiffs remain on premises, carry a Renown-owned phone or radio, and respond to any call effectively constitute a single activity for the benefit of Renown: that Plaintiffs remain "on-call" during their meal breaks. Undoubtedly, Renown's requirement that Plaintiffs remain on-call during their meal break raises the possibility that Renown could interrupt their meal breaks and require them to return to work status. In *Skidmore*, the Supreme Court gave deference to the Administrator's general test of excluding "sleeping and eating time of these employees from the work-week and the inclusion of all other on-call time." 323 U.S. 139. The Supreme Court further noted in that case that "the evidence shows that they were very rarely interrupted in their normal sleeping and eating time, and these are pursuits of a purely private nature which would presumably occupy the employees' time whether they were on duty or not and which apparently could be pursued adequately and comfortably in the required circumstances." *Id.* In the present matter, Plaintiffs have not alleged sufficient facts to raise a plausible inference that, because they were on-call, none of their meal breaks were bona fide. While Plaintiffs have sufficiently alleged that they remained on-call during their meal breaks, they have not alleged facts showing that this on-call status, of itself, precluded them for adequately and comfortably taking their meal break under the required circumstances. As such, Plaintiffs have not alleged sufficient facts to raise a plausible inference that their on-call status caused their meal breaks to be compensable time.

Plaintiffs' allegations that a comparison of the EPIC and KRONOS time stamps will show that they entered data during meal breaks are likewise insufficient to raise a plausible inference that Plaintiffs were never given a bona fide meal break. Relying on *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), Plaintiffs argue that Renown has the burden of "confirming that an

8

employee is not entitled to compensation when it manipulates employee time records such as the auto deduct policy at issue here." Plaintiffs' Opposition, ECF No. 43 at 9. Plaintiffs' reliance on *Anderson* is misplaced for several reasons. First, the Supreme Court did not reach any such holding in *Anderson*. Second, *Anderson* is irrelevant to the question whether Plaintiffs have adequately pled facts raising a plausible inference that they performed work during their meal breaks. In *Anderson*, the Supreme Court instead established that "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work *as a just and reasonable inference*." *Id.* at 687. Only once the employee has raised such an inference does the burden shift to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88. The employer's failure to meet its burden allows the award of damages to be based on the inference raised by the employee. Thus, at a minimum, Plaintiffs have the initial burden of alleging facts in their complaint that raise plausible inferences that they (a) performed work for which they were not properly compensated during meal breaks, and (b) the amount of that work. Merely alleging that Renown did not keep accurate records—by failing to verify that employees did not perform work during meal breaks—does not meet the Plaintiffs' initial burden of showing they performed work. Further, Plaintiffs' allegation that a comparison of the EPIC and KRONOS time stamps will show they performed data entry during meal breaks does not meet their burden of showing that they worked during a given meal break or the amount of hours worked. Accordingly, the Court rejects Plaintiffs' apparent argument that they have sufficiently alleged that every meal break was not bona fide.

The Court next addresses the dates on which Plaintiffs allege they specifically recall working through their meal break. Initially, the Court notes the overbroad allegation of the work performed.

Renown argues that Plaintiffs have relied only generally on the work they typically performed during a shift as indicative of the work probably performed during the meal break on those dates. Plaintiffs are not, however, required to allege the specific work performed to allege a colorable claim. The Court also notes the lack of a specific allegation as to the length of time they performed work for any given date. However, for the reasons stated below, the failure to allege the length of time work is immaterial. The Court assumes, solely for considering the present motion, that Plaintiffs worked the entirety of their 30-minute break on each of the identified days.

Neither Plaintiff has, however, alleged facts permitting an inference that they worked more than 40 hours during the workweek in which they worked through the meal break. Rather, Nevett has alleged that she regularly worked three 12.5-hour shifts per workweek and Noble has alleged that she worked three 12.5-hour shifts per workweek until some unknown date in 2019. As to these 12.5-hour shifts, the Plaintiffs have also alleged that, during each shift, they had a 30-minute meal break. As noted above, Plaintiffs have not alleged facts raising an inference that, generally, such meal breaks were not bona fide as a result of being on-call. Thus, the only plausible inference permitted from Plaintiffs' allegations is that, during the weeks they worked three 12.5-hour shifts, they worked for 36 hours.

Nevett has alleged four specific dates on which she worked through the meal break. As such, she has alleged facts raising an inference that, for each of those workweeks, she worked 36 hours (her regular shift) plus 30 minutes (the single meal break she worked through during that week). As such, Nevett's allegations suggest only that she worked 36.5 hours during those weeks in which she worked through her meal break. Stated conversely, she has not alleged a given week in which in excess of 40 hours as a result of working through her meal break. Accordingly, Nevett has not stated a colorable FLSA claim for failure to pay overtime compensation for hours worked in excess of 40 for a given workweek.

     Noble has alleged a single date on which she worked through a meal break: May 19, 2019. She has alleged that, until an unknown date in 2019, she worked three 12.5-hour shifts per workweek (that is, 36 hours per week). She has also alleged that, at some unidentified date in 2019, she began working five 8.5-hour shifts per workweek (that is, 40 hours per week). Noble has not alleged facts indicating whether, on May 19, 2019, she was working 36 hours per week or 40 hours per week. As a result, Noble has not alleged facts permitting an inference that she worked more than 40 hours as a result of working through her meal break on May 19, 2019. Accordingly, Noble has not stated a colorable FLSA claim for failure to pay overtime compensation for hours worked in excess of 40 hours for a given workweek.

     For similar reasons, neither Nevett nor Noble has alleged facts suggesting that they worked more than 40 hours during any week in which they specifically identified working in EPIC while not on the clock. Plaintiffs' general allegation that they "routinely" worked extra hours does not meet their burden of alleging facts that they worked extra hours entering data during a given week. Similarly, Plaintiffs' allegation that a comparison of the KRONOS and EPIC system time stamps would demonstrate that data entry occurred when employees were not clocked-in to KRONOS does not meet their burden of showing that they engaged in such uncompensated work during a given week.

     Finally, neither Nevett nor Noble has alleged facts suggesting that they worked more than 40 hours in the workweeks for which they specifically identified that they worked in EPIC while not clocked in. Both Plaintiffs have alleged that they were regularly working three 12.5 hours shifts for each of the workweeks in which they alleged they worked in EPIC while off-the-clock. As previously discussed, both Plaintiffs have alleged facts permitting only the inference that they worked 36 hours in their regular shifts for each of those workweeks. Nevett has not alleged any facts raising a plausible inference that, on each of the dates she has identified, she worked more than

four hours off-the-clock entering data into EPIC. Similarly, Noble has not alleged facts raising an inference that she worked more than four hours off-the-clock entering data into EPIC in any of the first few weeks of 2018. Accordingly, neither Plaintiff has alleged sufficient facts raising a plausible inference that they worked more than 40 hours in a given workweek as a result of entering data into the EPIC system while off-the-clock.

Finally, the Court again finds that Noble has not alleged sufficient facts to raise a plausible inference that, after she began working five 8.5 hour shifts with meal breaks per workweek, she worked in excess of 40 hours for any given week for which she was not paid appropriate overtime wages under the FLSA. Her conclusory and general allegations that she "routinely worked extra shifts and extra hours" for which she was not compensated does not meet her pleading burden. Stated succinctly, the Court recognizes that Noble has alleged sufficient facts to establish that, beginning sometime in 2019, she regularly worked 40 hours each week. She has also alleged that she routinely worked extra shifts and extra hours. She has not alleged any facts, however, suggesting that she was not properly compensated for these routinely-worked extra shifts and extra hours. Further, she has not alleged sufficient facts permitting a plausible inference that Noble performed work during her meal breaks or before or after work in any given week in which she was regularly scheduled to work 40 hours.

Accordingly, the Court will dismiss Nevett's FLSA claim to the extent she seeks damages for working off-the-clock while entering data into the EPIC system and working through a meal break. The Court will dismiss Noble's FLSA claim in its entirety.

**B. First Cause of Action – Improperly Calculated Overtime Pay**

The Court will again decline to dismiss Nevett's FLSA overtime claim to the extent it rests upon her allegation that Renown improperly calculated her overtime compensation that it paid to her. Nevett has alleged that she worked about 10 on-call shifts, in addition to her three regular 12-

hour shifts,[4] during her employment with Renown. As each on-call shift was also 12 hours, Nevett has sufficiently identified about 10 given weeks in which she worked 48 hours. Nevett has also alleged additional weeks in which she worked more than 40 hours in a workweek. While Nevett concedes she was compensated for the overtime hours, she has also alleged facts suggesting that she was not fully compensated for the work she performed in excess of 40 hours during those weeks. Specifically, Nevett has alleged that she received a bonus that should have been, but was not, included in calculating her regular rate of pay. Nevett has also alleged facts suggesting that her regular rate of pay, during weeks in which she worked an on-call shift, was incorrectly calculated. In moving to dismiss, Renown has not offered any argument that Nevett's allegations regarding her regular rate of pay are insufficient to raise a plausible inference that she was not properly compensated for her overtime hours in the approximately 10 weeks she had an on-call shift. Accordingly, the Court will permit Nevett's FLSA claim to go forward solely as to her theory that her regular rate of pay was incorrectly calculated during the approximately 10 weeks in which she had an on-call shift in addition to her three regular shifts and the additional weeks she has specifically identified as having worked overtime.

**C. Second Cause of Action -- State Claim for Failure to Pay Wages for All Hours Worked**

The Court will deny Renown's motion as to this claim as to both defendants. In contrast to Plaintiffs' FLSA claim, Plaintiffs are not required to allege facts raising an inference that the specific days in which they worked off-the-clock or during meal breaks resulted in working more than 40 hours in a week. Plaintiff's identification of the specific dates of these events is sufficient to provide

---

[4] The Court recognizes that Nevett alleges she worked a 12.5-hour shift which time included her 30-minute meal break. As she has not alleged sufficient facts that she was performing work during any given meal break, the result is that Nevett's regular 12.5-hour shifts were comprised of 12 hours of compensable work.

Renown with notice. Further, Plaintiffs have alleged that that they performed compensable work for which they did not receive any compensation.

Renown argues that NRS 208.016 must be construed to only apply to employees performing work during a break in or training period. The text of the statute, however, requires that "an employer shall pay to the employee wages for each hour the employee works." Plaintiffs have alleged that they performed work for which they received no wages, have identified the dates on which that work occurred, and have generally indicated the nature of the work performed. Accordingly, the Court finds that Plaintiffs have stated a colorable claim in their Second Cause of Action for failure to pay wages for all hours worked.

**D. Third Cause of Action – Noble's State Law Claim for Failure to Pay Overtime Wages**

In the Third Cause of Action, Noble seeks damages pursuant to NRS 608.018 for not receiving overtime wages in (a) workweeks in which she worked more worked more than 40 hours, and (b) days on which she worked more than 8 hours. Renown argues this claim must be dismissed for the same reasons as Noble's FLSA claim. The Court agrees that, with respect to Noble's claim for overtime wages for working more than 40 hours in a workweek, this claim fails for the same reasons as Noble's FSLA claim fails. She has not alleged facts raising a plausible inference that, for a given week, she worked in excess of 40 hours for which she did not receive overtime compensation.

However, the reasoning underlying this Court's dismissal of Noble's FLSA claims does not apply to her claim for overtime wages for days in which she worked more than 8 hours. Noble has alleged facts establishing that, throughout her employment for Renown, she worked at least 8 hours each day. She has also alleged that, for the first few weeks in early 2018 when she was the only unit clerk, she worked on EPIC while off the clock. She has also alleged that, on May 19, 2019, she worked through her meal break. Although Noble was on the clock during her meal break, she has also alleged that Renown automatically deducted the 30 minutes for the meal break. As such, Noble

has sufficiently alleged that she worked more than 8 hours on that day but did not receive overtime compensation for that work. Accordingly, the Court will deny Renown's motion on Noble's theory that she was not paid overtime wages on days that she worked more than 8 hours.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant Renown Health's Partial Motion to Dismiss Second Amended Complaint (ECF No. 42) is:

DENIED as to Plaintiff Emily Nevett's claim, in her First Cause of Action, that she was not fully compensated for overtime work because her regular rate of pay was incorrectly calculated;

DENIED as to Plaintiffs' Second Cause of Action;

DENIED as to Plaintiff Bonnie Noble's claim, in her Third Cause of Action, that she was not fully compensated for overtime work performed in excess of 8 hours in a workday; and is

GRANTED without prejudice as to all remaining claims.

IT IS FURTHER ORDERED that Plaintiffs are granted leave to amend their Second Amended Complaint to correct the deficiencies of the dismissed claims. Any such amended complaint must be filed not later than 30 days from the date this Order is entered.

IT IS SO ORDERED.

Dated: August 24, 2022

_____
ROBERT C. JONES
United States District Judge