**THIERMAN BUCK, LLP**
Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
325 W. Liberty Street
Reno, NV 89501
Tel. (775) 284-1500
Fax (775) 703-5027

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| EMILY NEVETT and BONNIE NOBLE, on behalf of themselves and all other similarly situated individuals,<br><br>        Plaintiffs,<br><br>v.<br><br>RENOWN HEALTH, and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No.: 3:21-cv-00319-ART-CSD<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, REPRESENTATIVE PLAINTIFFS' PAYMENTS, AND SETTLEMENT ADMINISTRATOR COSTS**<br><br>**Hearing Date:** January 29, 2025<br>**Time**: 1:00 p.m.<br>**Dept.:** Reno Courtroom, 3<br>**Judge:** Hon. Anne R. Traum |

Plaintiffs Emily Nevett and Bonnie Noble ("Plaintiffs"), by and through their counsel, Thierman Buck, LLP, hereby submit this Motion for Final Approval of Collective and Class Action Settlement, Attorneys' Fees and Costs, Representative Plaintiffs' Payments, and Settlement Administrator Costs ("Motion for Final Approval"). Pursuant to the Fair Labor Standards Act ("FLSA") and Rule 23 of the Federal Rules of Civil Procedure ("FRCP"), Plaintiffs ask the Court for an order:

(i)     Finally approving the collective and class action settlement between Plaintiffs and Defendant Renown Health;

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

(ii)    Finally certifying the FRCP Rule 23 Class for purposes of settlement;

(iii)   Approving the Representative Plaintiffs' Payments;

(iv)   Approving Class Counsel's Fees and Costs;

(v)    Approving the Costs of the Settlement Administrator; and

(vi)   Entering judgment in the case with prejudice as of the Court's Final Order and Judgment, pursuant to the terms set forth in the Settlement Agreement.[1]

The Motion for Final Approval is based upon this Motion, the following memorandum and points of authorities in support hereof, the declarations filed in support of this Motion, the Collective and Class Action Settlement between Plaintiffs Emily Nevett and Bonnie Noble, et al and Defendant Renown Health ("Settlement") (ECF No. 72-1, Exhibit 1, pp. 10-61), the Court's Order Granting Preliminary Approval of the Settlement (ECF No. 73), all accompanying exhibits, and records on file herein, all matters upon which judicial notice may be taken, any oral argument that may be presented, and upon such other matters the Court deems just and necessary.

Dated: January 17, 2025                THIERMAN BUCK, LLP


/s/   Leah L. Jones
MARK R. THIERMAN
Nevada Bar No. 8285
JOSHUA D. BUCK, ESQ.
Nevada Bar No. 12187
LEAH L. JONES, ESQ.
Nevada Bar No. 13161
*Attorney for Plaintiffs*

---

[1] The Parties previously filed, as Exhibit D to the Joint Motion for Preliminary Approval, a proposed Final Approval Order. *See* ECF No. 72-1, pp. 56-61. The Order has been amended to reflect the Claims Administration Process and is being filed concurrently herewith this Motion.

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

On October 18, 2024, the Court entered an order granting preliminary approval of settlement of the above-captioned case. *See* ECF No. 73, hereinafter the "Preliminary Order." In addition to approving the overall settlement (the "Settlement"), the Preliminary Order appointed Class Representatives and Class Counsel, approved the Notice to Class Members, scheduled the final approval and fairness hearing, and confirmed the selection of Simpluris as the Settlement Administrator. *Id.* Plaintiffs and Defendant, Renown Health ("Defendant" or "Renown") (collectively the "Parties") have complied with all the terms of the Court's Preliminary Order. Plaintiffs now seek final approval of this collective and class action settlement pursuant the Fair Labor Standards Act ("FLSA") and Rule 23 of the Federal Rules of Civil Procedure ("FRCP").

The class administration procedures ordered by the Court have been completed as summarized in the declaration prepared by Markus Bulthuis of Simpluris. *See* Declaration of Markus Bulthuis Regarding Notice and Settlement Administration, hereinafter "Bulthuis Dec." The Notice and all related materials ("Notice Packets") were distributed to 9,617 Class Member and only 150, or 1.56%, were ultimately deemed undeliverable. Bulthuis Dec., ¶¶8-10. Deadlines for Class Members to submit claim forms, opt out of, or object to the Settlement have passed. *Id.*, ¶5 and Notice Packet. Simpluris received 2,073 valid claim forms, with these claimants having claimed approximately 30% of the available shifts and Settlement funds. *Id.,* ¶¶11 and 13. The highest individual Class Payment to a Participating Class Member is approximately $2,683.32, and the average individual Class Payment is approximately $778.15. *Id.,* ¶13. A mere thirty (30) Class Members have requested exclusion from the Settlement, or 0.3% of the Class. *Id.*, ¶14.

Only one (1) Class Member, Mr. Wallace Tonge has objected to the Settlement. *See* ECF No. 74; Jones Dec., ¶35; Bulthuis Dec., ¶15. Mr. Tonge's objection is essentially based on two (2) grounds. First, Mr. Tonge desires a 100% recovery for all the wages and other associated relief for the time that he, as an individual, allegedly spent performing work off-the-clock. He (like Plaintiffs) argues that a comparison between the electronic medical record (EMR) data and the timekeeping ("Punch") data can conclusively demonstrate the amount of wages owed to

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

employees. Relatedly, he believes that the formula for paying out settlement proceeds should be based on this comparison of EMR versus Punch data, as opposed to a pro rata share based on shifts worked. While Mr. Tonge is not incorrect in the assertion that an EMR/Punch comparison can be used to ascertain potential liability and damages in this case—indeed, this is precisely what Plaintiffs have done—Mr. Tonge's objection fails to account for the fact that the EMR/Punch comparison is simply the first step in proving this case and Defendant maintained numerous valid defenses to Plaintiffs' claims for compensation. *See* Jones Dec., ¶¶11-13, 20-21. For instance, many of the EMR entries are computer generated, which means that it difficult to prove that a human was making the entries. *Id.,* ¶¶11, 20-21. Also, Defendant maintained that even if certain employees were interacting with the EMR off-the-clock, there was no company-wide policy requiring employees to do so, which would negate continued collective action treatment and class certification. *Id.* Additionally, Defendant contended that even if certain employees did perform work off-the-clock, Defendant did not have the requisite knowledge that this work was being performed, which is a legal prerequisite to the compensability of work. *Id.* Nevertheless, even taking into consideration all of these defenses, the total damages for Plaintiffs' pre- and post-shift off the clock work claim amounted to only $3.4 million; Plaintiffs have achieved a resolution here of $8.75 million. *Id.*

Related to Mr. Tonge's objection that the settlement should be based on the EMR/Punch comparison is his dislike of the settlement payout formula. Unlike an individual action (which Mr. Tonge seems to prefer), a class action that involves over 9,000 individuals uses averages. For instance, when assessing the potential damages involved in this action, the parties agreed to a representative random sample of 5% of EMR/Punch data and extrapolated the results from this random sample to the entire collective and class. *See* Jones Dec., ¶14. Even the production of this relatively small percentage took Defendant and their agents months to collect given the behemoth size of the EMR data. *Id.,* ¶15. Mr. Tonge's suggestion that the Parties should have reviewed all the EMR/Punch data and assign an exact formula to each class member based on this data defeats the very purpose of large collective and class actions such as this, which are designed to create large scale efficiencies of economy. Rather than burden the parties and increase the expense of

the settlement (which would adversely affect settlement class members' settlement share), the Parties agreed to a pro rata distribution of settlement funds on a per shift basis. This allocation takes into account potential unpaid wages on a per shift basis (as opposed to a potential formula that is based on a workweek basis) so that employees who worked more shifts would get more settlement proceeds. This per shift basis of allocation is reasonably related to the claims asserted by Plaintiffs and is a well-used formula in wage-hour off-the-clock cases.

Mr. Tonge's second objection relates to Class Counsel's requested fee amount for all the work that Class Counsel has invested in this case and the risks that Class Counsel took in prosecuting this action on a contingency fee basis. The amount requested by Class Counsel is well within the established legal precedent for wage-hour actions of this size, particularly when Class Counsel was able to obtain an excellent result on behalf of the Class, wherein the members of the Class will receive, on average, $778.15 from this Settlement. *See* Bulthuis Dec., ¶13. Unlike the other vague class actions that Mr. Tonge refers to in his objection, this Settlement is a far cry from a coupon settlement that he may have participated in the past. Here, Mr. Tonge will be receiving approximately $1,148.28, which is a significant recovery in a complex case where many risks and pitfalls remained. *Id.*, ¶15.

As more fully discussed below in §IX, Mr. Tonge's objections should not deter this Court from entering final approval in favor of the Settlement. For these reasons more fully set forth below, Mr. Tonge's objections should be overruled and the Settlement, as negotiated by the Parties, should be approved in its entirety.

## II.    THIS LITIGATION

The Parties provided an overview of the Procedural History and Background of this case in the Parties' Joint Motion for Preliminary Approval (ECF No. 72), which Plaintiffs incorporate by reference. Class Counsel provides a more detailed procedural history of the case which fully describes Class Counsel's comprehensive efforts on behalf all members of the Class. Plaintiffs provide this overview to assist the Court in its analysis regarding the overall fairness and reasonableness of Class Counsel's fee request and to support Plaintiffs' position that the Court should overrule Mr. Tonge's objection regarding Class Counsel's requested fee.

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

THERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

On April 3, 2020, Plaintiff Nevett filed this case in the Second Judicial District Court, Washoe County. While in State Court the Parties stipulated to extend the time for Defendant to respond to Plaintiffs' Complaint in light of the ongoing COVID-19 Pandemic and its effects on Renown's operations, which was granted by the court on June 30, 2020. Defendant answered on August 24, 2020, generally denying all allegations and asserting twenty-four affirmative defenses. The Pretrial Order was issued on September 28, 2020, and the Parties filed their Joint Case Conference Report on December 30, 2020.

On April 23, 2021, a stipulated scheduling order was entered. Renown filed a Motion for Partial Summary Judgment on June 4, 2021, asserting that because Plaintiff Nevett was a member of the nurse's union and subject to a collective bargaining agreement her Nevada statutory claims related to meal and overtime claims were inapplicable. In response, Plaintiffs filed a motion for leave to file an amended complaint adding Plaintiff Bonnie Noble, a non-union employee, on June 25, 2021, prior to the scheduling order deadline to amend. Defendant opposed.

On July 13, 2021, the Parties stipulation for Plaintiffs to respond to Defendant's Partial Summary Judgment Motion was granted. On July 23, 2021, Defendant removed to this Court. (ECF No. 1.)

After Plaintiffs met and conferred with Defendant and advised Defendant that Plaintiff Nevett would be adding non-union Named Plaintiff Noble as well as adding an FLSA claim, Defendant refused to stipulate to Plaintiffs filing of the first amended complaint. Plaintiffs alleged that over 30 days had elapsed since Defendant was made aware of Plaintiffs' intent to add Plaintiff Noble and a federal FLSA claim, but that Defendant had opted to wait more than 30 days to file its removal. *See Harriman v. Liberian Mar. Corp.,* 204 F. Supp. 205. 206-207; *see also* ECF No. 5 (Defendant's Statement Regarding Removed Action). Thus, on August 19, 2021, Plaintiffs filed their motion to remand to state court based on lack of jurisdiction due to the fact that even under Defendant's own understanding removal must have been sought before July 7, 2021. Defendant did not oppose but instead stipulated to allow Plaintiffs to file the First Amended Complaint ("FAC"), which was granted on August 25, 2021. (ECF No. 8.)  Plaintiffs filed the FAC and notice of withdrawal of the motion to remand the same day. (ECF Nos. 8 and 9, respectively.)

THERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

On September 8, 2021, Defendant filed their motion to dismiss the FAC (ECF No. 13), and Plaintiffs opposed on October 13, 2021. (ECF No. 16.) Also on October 13, 2021, Plaintiffs filed their motion for conditional certification and notice pursuant to 29 U.S.C. §216(b), which was fully briefed as of November 24, 2021. (ECF Nos. 17 – 17-9, 20 – 20-3, 22.) After video hearing in front of the Honorable Judge Jones, conditional certification of the collective pursuant to the FLSA was granted on December 17, 2021. (ECF No. 26.) The Court initially ordered Defendant to provide the class list in that Order. On December 23, 2021, Defendant filed an Emergency Motion to Stay Effects of Order Granting Plaintiffs' Motion for Circulation of Notice. (ECF No. 28). On December 28, 2021, Defendant filed an Objection to the Court's Order Granting Plaintiffs' Motion for Circulation of Notice. (ECF No. 31).

On April 18, 2022, the Court granted in part and denied in part Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint with leave to amend. (ECF No. 38). The Court also ruled that Defendant's Emergency Motion for Stay and Objection were denied as moot. *Id.* Plaintiffs filed a Second Amended Complaint ("SAC") on May 27, 2022. (ECF No. 39.)

Defendant filed another partial motion to dismiss the SAC, which was fully briefed as of July 15, 2022. (ECF Nos. 42, 43, 44.) The Court again granted in part and denied in part Defendant's motion with leave to amend the SAC. (ECF No. 45.)

On September 21, 2022, Plaintiffs filed a Third Amended Complaint ("TAC")[2]. Defendant filed a Partial Motion to Dismiss the TAC, which was fully briefed as of November 30, 2022. (ECF Nos. 49, 50, 53). On September 11, 2023, the Court granted in part and denied in part Defendant's Motion to Dismiss the TAC. (ECF No. 54.) In that Order the Court denied Defendant's motion to dismiss Plaintiff Nevett's FLSA claim, denied as to Plaintiff Noble's FLSA and NRS 608.018 overtime claim, and granted as to Plaintiff Noble's FLSA and NRS

---

[2] The TAC alleged four causes of action and requested a jury trial: (1) failure to pay overtime in violation of 29 U.S.C. §207 on behalf of Plaintiffs and the FLSA Class, (2) failure to compensate for all hours worked in violation so NRS 608.140 and 608.016 on behalf of Plaintiffs and the Nevada Class, (3) failure to pay overtime in violation of NRS 608.140 and 608.018 on behalf of Plaintiff Noble and the Nevada Non-Union Subclass, and (4) failure to pay all wages dues and owing in violation for NRS 608.140 and 68.020-.050 on behalf of Plaintiffs and the Continuation Wage Class.

THERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

608.018 overtime claim specific to the time period of the first few weeks of 2018, only. *Id.* The Court did not allow leave to amend. *Id.*

Subsequently, the Parties agreed via email to extensions of the class list to November 10, 2023, and entered into a Stay pending mediation. (ECF No. 60.) The Stay was extended twice to accommodate Defendant's collection of data for mediation purposes and for the second mediation attempt. (ECF Nos. 65, 69, respectively.)

The Parties selected Mr. Hunter Hughes, a skilled and well-known wage and hour mediator. *See* Jones Dec., ¶¶16-17. In preparation for the mediation, Defendant provided an agreed upon sampling of time, pay, and Epic data for over 400 Class Members, provided the maximum class size, the number of separated employees, the number of current employees, and the workweeks worked during the Class period in order for Plaintiffs' data analyst to provide an exposure detail specific to each of Plaintiffs' allegations and to be included in Plaintiffs' mediation statements. *Id.; see also,* Settlement, §II.A. The first mediation session was rescheduled from March 8, 2024, to June 13, 2024. *Id.* The Parties were unable to reach a resolution. *Id.* However, the Parties agreed to a second mediation which took place on August 28, 2024. *Id.* Although the Parties were again unable to reach an agreement during the mediation, Mediator Hughes provided a mediator's proposal. *Id.,* ¶18.

In sum, after four-plus years of heavily contested litigation, jurisdictional challenges, briefing and hearings on three motions to dismiss, resulting in three amended complaints, full briefing and a hearing culminating in a grant of conditional certification of the FLSA collective, and after two well-informed good-faith negotiations presided over by a private mediator—in which both sides recognized the substantial risks, the probability of lengthy delays and significant additional costs of litigation—Plaintiffs and Defendant agreed to settle this action. The Parties continued to zealously represent their clients throughout drafting of the proposed settlement agreement, in order to reach the terms and conditions of the Settlement Agreement now subject to final approval by the Court.

///

///

THERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thermanbuck.com www.thermanbuck.com

## III.    KEY TERMS OF THE SETTLEMENT

### A.    The Settlement Class

The Court's Preliminary Order approved the following Class definition:

> All nonexempt hourly paid patient care employees who: (1) interacted with EPIC off the clock (as demonstrated by the comparison between the EPIC and KRONOS time data); (2) were subject to Defendant's Auto-Deduct Meal Break policy; and/or (3) were subject to Defendant's On-Call Overtime policy, at any time from April 3, 2017, through the date of final court approval of the Settlement.

ECF No. 73.

### B.    The Settlement Allocation

The Settlement provides a Maximum Settlement Amount of $8,750,000.00. *See* Settlement, ECF No. 72-1, pp. 15-16, §III. The Net Settlement Amount will be approximately $5,727,211.72.[3] *See* Jones Dec. ¶52. The Net Settlement Amount represents the Maximum Settlement Amount minus: (i) a total of $45,000.00 in Representative Plaintiff Payments of $15,000.00 to each Named Plaintiff Nevett and Plaintiff Noble for the risks they undertook in initiating this action and the work they performed on behalf of the all similarly situated employees and $5,000.00 each to Opt-In Plaintiffs Dang, Finley, and King for the work they performed on behalf of the Class; (ii) up to $2,916,666.67 in attorneys' fees, which represents 1/3 of the common settlement fund, for the unpaid hours invested in prosecuting this action and the extreme risk counsel took in litigating this action on a contingency fee basis for the last four-plus years; (iii) reimbursement of the actual-out-of-pocket expenses of $32,951.61 incurred by counsel in litigating this action[4]; and (iv) an amount of up to $28,170.00 in third-party settlement administrator fees and costs for administering the settlement notification process and distribution of settlement funds. *See* Jones Dec., ¶52; ECF No. 73, Preliminary Order.

---

[3] The dollar amounts provided are approximations based on the final approval by this Court of Class Counsel's fees and costs, the Settlement Administrator's fees, as well as the approval of the Enhancement Awards.

[4] The Preliminary Order provided for up to $25,000.00 in costs. As discussed at §VIII, below, Class Counsel's costs are actually $32,951.61. This is a difference of $7,951.61, which resulted from the second mediation charge of $10,000.00 and $250.00 in expert fees not appearing on Counsel's account until after the filing of the Preliminary Approval motion.

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

### C.    Release of Claims

Once the Settlement is final and effective, the Class Representatives and all Settlement Class Members who have not opted-out will release all federal and state law claims for damages against Defendant that are *based on the factual allegations asserted in this action*. Thus, claims such as workers compensation claims, non-wage and civil rights claims are not being released by Class Members. ECF No. 72-1, pp. 24-25, §III.E.

## IV.    ARGUMENT IN FAVOR OF FINAL APPROVAL OF THE SETTLEMENT

Federal Rule of Civil Procedure 23(e) "mandates judicial review of any settlement of the claims, issues, or defenses of a certified class." *Sobel v. Hertz Corp.*, No. 3:06-CV-00545-LRH-RAM, 2011 WL 2559565, at *5 (D. Nev. June 27, 2011), *citing* FRCP 23(e). Three steps must be satisfied for final approval of the Settlement. First, the Court must finally certify the Settlement Class. Second, the Court must find that the Class received adequate notice under Federal Rule of Civil Procedure 23(c)(2)(B). Third, the Court must decide whether the Settlement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (discussing Rule 23(e)(2) standard). These requirements are all met.

### A.    The Settlement Class Should Be Finally Certified

In the Preliminary Approval Order, this Court re-affirmed the conditional certification of the FLSA Class and provisionally certified the same Class under Rule 23. (ECF No. 73.) The same analysis applies here. Thus the Class should be certified for settlement purposes under Rule 23(e), for the same reasons set forth in the Parties' Joint Motion for Preliminary Approval of the Settlement. *See* ECF No. 72, §IV.A-B, pp. 11-23.

### B.    Rule 23(c)'s Notice Requirements Have Been Met

A class action certified under Rule 23(b)(3) must satisfy the Rule 23(c)(2) notice provisions, and upon settlement, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." FRCP 23(e)(l). Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information. FRCP 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

This Court approved the class Notice and the notice distribution program. As outlined in the Introduction above and further in §D below, Simpluris flawlessly implemented the Notice process. Ultimately, over 98% of the Class Members have received a Notice (*see* Bulthuis Dec. at ¶10, noting 150 of 9,617 Notices remained undeliverable after remailing and skip tracing, equal to 1.56% of the total class), which far exceeds the constitutional requirement for notice. *See In re Motor Fuel Temperature Sales Litig.,* 429 F.3d 935, 944 (10th Cir., 2005) ("For due process purposes, rather than looking at actual notice rates, our precedent focuses upon whether the district court gave the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort.") (citations and internal quotation marks omitted). The Notice itself also exceeded the constitutional requirements to inform Class Members about the Settlement, in general, by notifying each class member they could dispute the covered shifts worked—the means to determine individual settlement share—which were personalized for each Class member. *Id.,* Exhibit A. The Notice informed Class Members of the nature of the action, the terms of the proposed settlements, the effect of the action and the release of claims, as well as class members' right to exclude themselves from the action and their right to object to the proposed settlements. *Id.* Thus, Notice complied with all of the requirements of Rule 23.

### C.    The Settlement Is Fair, Reasonable, and Adequate

The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge," who "is exposed to the litigants and their strategies, positions, and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). But the "court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Rodriguez v. West Pub. Co.*, 563 F.3d 948, 965 (9th Cir. 2009) (citation and internal quotation marks omitted).

In the Ninth Circuit, "voluntary conciliation and settlement are the preferred means of dispute resolution," which is "especially true in complex class action litigation." *In re Syncor ERISA*

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

*Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (internal quotation marks and citation omitted). There "is an overriding public interest in settling and quieting litigation," which is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). A "presumption in favor of voluntary settlement agreements" exists, and "this presumption is especially strong in class actions and other complex cases … because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3rd Cir. 2011) (internal citation and quotation marks omitted).

In determining whether a settlement agreement is fair, reasonable, and adequate the Court must weigh some or all of the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) *citing Hanlon*, 150 F.3d at 1026. Courts are not required to assess whether the settlement is ideal or the best outcome, but "only whether the settlement is fair, free of collusion, and consistent with Plaintiff's fiduciary obligations to the class." *Hanlon*, 150 F.3d at 1027; *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (courts should also consider whether the settlement is a product of fraud or collusion). All of these factors support approval of the Settlement.

       1.    <u>Relative strength of Plaintiffs' claims.</u>

In considering the relative strength of plaintiff's claims, courts typically consider decisions relating to the merits of the plaintiff's claims and whether settlement occurs before any substantive motions are decided. *See e.g., Pierce v. Rosetta Stone, Ltd.*, No. C- 11-01283 SBA, 2013 WL 5402120, at *3 (N.D. Cal. Sept. 26, 2013); *Odrick v. UnionBancal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *3 (N.D. Cal. Dec. 3, 2012). The litigation history is set forth in detail in §II, above as well as the terms of the Settlement, and fairness and adequacy of the

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

Settlement are set forth in the Parties' Joint Motion for Preliminary Approval (ECF No. 72) and the Jones Dec. in support thereof, which Plaintiffs incorporate by reference. (ECF No. 72-1.)

Here, over the past four-plus years of hard fought litigation the Parties have engaged in extensive motion work as to the legal and factual sufficiency of Plaintiffs' claims through Defendant's three motions to dismiss and Plaintiffs' three amended complaints, and full briefing and declarations by Opt-In Plaintiffs supporting Judge Jones' grant of collective status. Moreover, the Parties exchanged initial disclosures, expert disclosures, Defendant provided two supplementals, the Union Agreement, personnel files, pay and time data for Plaintiff Nevett, employment policies including work and position policies, and pay policies that provided support for Plaintiffs' motion work and the Parties' multiple mediation sessions. Thus, the discovery and expert analysis, combined with the extensive motion practice prior to mediation provides this Court with the ability to "adequately evaluate[]" the merits of likelihood of success of Plaintiffs' claims. *Churchill,* 361 F.3d 576.

        2.    Risk, expense, and complexity of further litigation.

Settlement is preferable to lengthy and expensive litigation with uncertain results. *Harris v. U.S. Physical Therapy, Inc.*, 2012 WL 6900931, at \*7 (D. Nev. Dec. 26, 2012) *report and recommendation adopted*, 2013 WL 211085 (D. Nev. Jan. 18, 2013).

Here, there are numerous risks relating to the scope (collective/class status) of the case, liability, and ultimate damage exposure on Plaintiffs' claims. As set forth in Plaintiffs' preliminary approval papers, Plaintiffs' wage claims revolved around three (3) independent theories: (1) that Defendant suffered and permitted all of the certified collective and class to work off the clock without compensation, which could be verified by a comparison of the electronic medical record (EMR) data, (2) that Defendant's meal period automatic deduction policy resulted in the underpayment of wages, and (3) that Defendant failed to pay the correct overtime premium to class members who worked "on-call" shifts. While Plaintiffs remain confident in their claims, even at this stage of the litigation, serious legal risks remained. *See* Jones Dec., ¶21. For instance, with respect to the off-the-clock claim, there would be strenuous defense to the idea that a comparison of the EMR data with the punch data would conclusively demonstrate if an

THERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thermanbuck.com www.thermanbuck.com

employee was or was not working off-the-clock. *Id.; see also Darling v. Dignity Health, Dignity Community Care,* 2022 WL 1601408 (N.D. Cal., Apr. 26, 2022) (Order denying class certification.) Furthermore, Defendant's "knowledge" defense to the off-the-clock claim—that even if the EMR versus punch data comparison could identify uncompensated work, the Defendant did not have the requisite knowledge that said work was being performed that thus it would not be legally compensable—presented a serious potential hurdle. *See* Jones Dec., ¶¶11 and 21.

Defendant also maintained a handful of legitimate defenses to Plaintiffs' automatic meal period deduction theory. *Id.,* ¶21. For instance, Defendant threatened to produce evidence that all employees verified that they did indeed receive a full 30-minute meal period when they clocked out for the workday, thereby negating Plaintiffs' theory that Defendant had failed to ensure that employees actually received the full 30-minute meal break. *Id.* Ultimately, this theory/claim would result in a complex factual determination that could result in an adverse determination against Plaintiffs. *Id.* These risks associated with further litigation weigh in favor of final approval, consistent with the established policy preferring settlement over further time-consuming litigation. *Harris,* 2012 WL 6900931, at *7.

### 3. Risk of maintaining collective/class status.

Here, the risk that a Class might not be certified pursuant to FRCP 23, decertified pursuant to the FLSA, or might be significantly smaller than proposed, and the time, expense, and complexity of the litigation, including the possibility of additional appellate proceedings presented great risk and further expense and delay had the Parties failed to reach a compromise. *See* Jones Dec. ¶¶10-13, 17-18, 20. Of particular relevance to the reasonableness of the proposed Settlement are the numerous potentially dispositive defenses advanced by Defendant including, among other things, the arguments that claims are individualized and, therefore, not susceptible to class or collective treatment. *Id.* In sum, the Settlement eliminates all uncertainty and gives class members a substantial payment now, as opposed to years of further litigation.

///

///

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

4.   Benefits conferred by the Settlement.

A settlement may be fair and reasonable even if it provides only a fraction of what could have been obtained at trial. *See e.g., Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (compromise is essence of settlement); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2nd Cir. 1974) *abrogated on other grounds* (that proposed settlement may amount to only a fraction of potential recovery does not mean the proposed settlement is inadequate and should be disapproved).

In preparation for mediation Defendant provided Plaintiffs with a randomly selected group of 400 employees' EPIC and KRONOS data, pay data, total number of class members, number of current and former employees, and number of workweeks in the class period. *See* Jones Dec., ¶¶14-15, 20. Armed with this information, Plaintiffs' damages expert was able to calculate Defendant's wage exposure based on the off-the-clock work at approximately $3.4 million. *Id.,* ¶16. Plaintiffs calculated the meal break violation at approximately $6.4 million, which was based on all instances where Plaintiffs could demonstrate from the EMR records that employees did not have at least 30-minutes of uninterrupted EMR activity (Plaintiffs believed that they could prevail on this claim even with Defendant's meal break affirmation). *Id.* All of these calculations were based on a weighted overtime rate, which took into consideration varying hourly rates for the various Class Members' job positions. *Id.* Thus, not including penalties, Plaintiffs calculated Defendant's realistic hard damage exposure to be approximately $9.8 million. *Id.*

Using that estimated hard damage exposure, the gross settlement fund amount of $8.75 million represents a recovery rate of approximately 89%.[5] *Id.,* ¶20; *see also Villegas v. JP Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) *citing In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair.")). Plaintiffs agreed to resolve their claims on behalf

---

[5] There are certainly additional damages that were sought by Plaintiffs (such as in the form of liquidated damages under the FLSA, continuation wages under NRS 608.040-.050, attorneys' fees and costs) but all of those additional damages were derivative of the underlying claim for wages.

of themselves and on behalf of the Class at an estimated 89% recovery of the total potential for the following principal reasons. *See* Jones Dec., ¶ 21. First, as with all settlements, a recovery of 89% of the total potential recovery represents a relatively quick and certain payout for all members of the Class. *Id.* Second, resolving the action as a total non-reversionary payout to all members of the Class takes away any risk that the action may not ultimately proceed to trial on a class-wide basis. *Id.* By resolving the case on a class-wide basis, all class members will be receiving funds whereas there is significant risk that the amount paid to absent class members would be zero. *Id.* Third, the case was highly disputed as to what the data actually showed. Plaintiffs alleged that the EPIC data in comparison to the punch data demonstrated that Plaintiffs and other class members were working off-the-clock pre- and post-shift and during the workday/meal periods. Defendant, on the other hand, argued that while the data may have showed a computer entry while an employee was "off-the-clock", it did not conclusively demonstrate that the employee was actually working because (i) the entry could have been made by another employee on behalf of an employee who forgot to log-off, (ii) the duration of the work was incalculable, and/or (iii) even if an employee made an entry "off-the-clock", that employee could have then proceeded to take a legally compliant meal break. *Id.* For instance, Defendant threatened to produce evidence that all employees verified that they did indeed receive a full 30-minute meal period when they clocked out for the workday, thereby negating Plaintiffs' theory that Defendant had failed to ensure that employees actually received the full 30-minute meal break. *Id.* Ultimately, in Defendant's opinion, all of these factors negated class-wide treatment of the issues and would undercut any potential liability. In short, the class, liability, and damage issues in this case were all hotly contested and the Settlement represents a fair, reasonable, and adequate compromise of this litigation. *Id.*

Further, because all Class Members will receive a proportionate share of the Settlement fund based upon a pro rata share of the total number of Covered Shifts worked for Defendant, the Settlement's proposed plan of allocation equitably bases the distribution of Settlement funds on the type and extent of damages actually suffered by Class Members. *See* Settlement § III.B.4–6. Accordingly, this factor, also, favors final approval of the Settlement.

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

5.    <u>Extent of discovery completed and stage of the proceedings.</u>

As discussed above in each of the preceding sections, this Settlement was only possible after sufficient discovery, genuine arms-length negotiation, two mediations, and a mediator's proposal and should be presumed fair. *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). As noted in the motion for preliminary approval and more fully described herein, the Parties engaged in necessary discovery including reviewing timekeeping, pay, and EMR data and analyzed legal authority specific to the Plaintiffs' claims and Defendant's defenses. Both Parties were well versed in the facts and law applicable to the issues and had evaluated the merits of their claims and defenses testing the pleadings and in preparation for mediation and the potential for further years-long litigation. *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013). Truly, at the time the settlement was reached, the Parties "ha[d] a clear view of the strengths and weaknesses of their cases." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985). Accordingly, this factor weighs in favor of final approval.

6.    <u>Experience and views of Plaintiffs' Counsel.</u>

Because they are closely acquainted with the underlying litigation, significant "weight is accorded to the recommendation of counsel." *Nat'l Rural*, 221 F.R.D. at 528 (quoting *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). Plaintiffs are represented by counsel with broad experience in complex employment litigation. *See* Jones Dec., ¶¶4-8. More specifically, Plaintiffs have had numerous other "hospital cases" that involved the same or substantially similar claims. *See e.g., Dignity Health, supra; Santiago v. NorthBay HealthCare Group,* Case No. 2:20-cv-01385-MCE-AC (E.D. Cal., Dec. 27, 2022); *Martinez v. John Muir Health,* 2019 WL 11790456 (N.D. Cal., Nov. 20, 2019). Plaintiffs' counsel recommends that the Settlement be approved because they believe it is fair, reasonable, and adequate to the proposed class and because it reflects a reasoned compromise that takes into consideration the inherent risks in all employment class litigation and, in particular, this litigation. *See* Jones Dec. at ¶¶16-21. Given the experience of the attorneys involved in this action, the Court should credit counsels' view that the settlement is fair, reasonable, and adequate. *Id.,* ¶¶6-8, 10, 21; *see also Rodriguez*, 563 F.3d at 967 (parties represented by capable counsel better positioned than courts to produce

1    a settlement that fairly reflects each party's expected outcome). Accordingly, this factor weighs

2    in favor of final approval as well.

3         7.    Presence of a governmental participant.

4    There is no governmental participant in this action. As a result, this factor is inapplicable.

5         8.    Reaction of the Class.

6    Here, over 98% of the Notice Packets were successfully mailed. *See* Bulthuis Dec. at ¶10.

7    Just thirty (30) Class Members requested exclusion from the Settlement. *Id.*, ¶14. Simpluris received

8    2,073 valid claim forms, equal to 21.6% of the total Class. *Id.,* ¶11. Claimants have claimed

9    approximately 30% of the available shares of the Settlement. *Id.* Only, one (1) Class Member

10   objected to the Settlement (which should be overruled as set forth below). *See* Jones Dec., ¶¶36-37;

11   Bulthuis Dec., ¶15. These facts suggests approval of the settlement by the entire class. *See Lee V.*

12   *Enterprise leasing Co.-West,* 2015 WL 2345540, *7 (D. Nev. 2015) (noting 11% rate does not

13   indicate proposed settlement is not fair, reasonable, and adequate given six objections and small

14   number of opt-outs, "does not cast doubt on what appears to be a beneficial settlement for the

15   class members."). Therefore, this factor also favors final approval of the settlement. *Id.,* *6-7

16   (granting final approval where six class members objected, less than 1% opted out, and noting, "

17   the dearth of meaningful objections and relatively small number of opt-outs does not cast doubt

18   on what appears to be a beneficial settlement for the class members.").

19        9.    The negotiation process was free from fraud and collusion.

20   The Court's inquiry into what is otherwise a private consensual agreement is limited to

21   the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud

22   or collusion between the negotiating parties and that the settlement, taken as a whole, is fair,

23   reasonable, and adequate to all concerned. *FDIC v. Alshuler,* 92 F.3d 1503, 1506 & n.5 (9th Cir.

24   1996). Here, the Court preliminarily concluded that the settlement was "fair, reasonable, and

25   adequate" as to all potential settlement class members. (ECF No. 73.) Nothing has changed to

26   alter that conclusion. The Parties began settlement negotiations only after sharing necessary

27   information through the exchange of disclosures and pertinent discovery, researching the relevant

28   legal issues, engaging in serious arms-length negotiations, analyzing the potential recovery, and

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

THERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thermanbuck.com www.thermanbuck.com

ultimately reaching the Settlement preliminarily approved by the Court. *See* Jones Dec. at ¶¶14-21. The Parties acknowledged the risks on the merits and class issue and determined that settlement was sensible to avoid these risks and the time and expense required for further litigation and potential appeals. *Id*. Because the Parties were fully informed and engaged in arms-length negotiations, the agreement is free from fraud and collusion.

In short, under the applicable standards for approval of a class action settlement under FRCP 23(e), the Settlement meets the standards for final approval.

## V.    The Settlement Claims Administration Expenses Are Reasonable And Should Be Approved

The Settlement Administrator, Simpluris, has fully complied with the Settlement and the Order of this Court preliminarily approving the Settlement. Simpluris has incurred and will incur $28,170.00 in costs in furtherance of the administration of the Settlement. *See* Jones Dec., ¶¶22-34, *citing* Bulthuis Dec., ¶16. Given the work performed, and expenses incurred, on behalf of the Settlement Class, the Claims Administration fee should be finally approved as fair, reasonable, and adequate.

## VI.    The Class Representatives' and Opt-In Plaintiffs' Payments Should Be Approved

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). The amounts of $15,000.00 to each named Plaintiff and $5,000.00 to each Opt-In Plaintiff is not excessive. "Incentive awards [as opposed to agreements] are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F. 3d 948, 958 (9th Cir. 2009). The total of $45,000.00 in awards are in line with what is generally awarded in class-action settlements in the Ninth Circuit. *See, e.g., Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995) (approving $50,000 participation award to one named plaintiff for 10 years of active litigation ); *Glass v. UBS Financial Services, Inc., 2007 WL 221862,* at *17 (N.D. Cal. Jan. 26, 2007) (approving $25,000 enhancement to each of four named plaintiffs for seven months of litigation).

Here, as set forth in the Preliminary Approval Motion, Class Representatives have been active participants in the litigation. *See* ECF No. 72-1, pp. 7-8, Jones Dec. at ¶¶21-24; Declarations of Emily Nevett (ECF No. 72-3), Bonnie Noble (ECF No. 72-4), Collette Finley (ECF No 72-5), Natalie King (ECF No. 72-6), and Vicki Dang (ECF No. 72-7). Nothing has changed to diminish their contributions. Additionally, their Payments were included in the Notice to the Class Members and no Class Member objected to such Payments. Accordingly, the Representative Plaintiffs' Payments should be approved.

## VII.    Class Counsel's Attorneys' Fees Should Be Approved

This is a hybrid action brought pursuant to federal wage-hour law under the FLSA and Nevada's wage-hour laws. The FLSA provides that employee plaintiffs shall recover reasonable attorneys' fees and costs from the defendant-employer. *See* 19 U.S.C. § 216(b). FRCP Rule 23(h) also provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FRCP 23(h). The sole purpose of the court's supervision of the attorney fees award in a hybrid collective and class action settlement proceeding under the FLSA and Rule 23(e) is to make sure that the settlement taken as a whole is fair, reasonable, and adequate. *See* FRCP 23(e)(2).

### A.    Class Counsel's Fee Award is Properly Calculated as a Percentage of the Total Settlement Amount

The United States Supreme Court has recognized that "a litigant or lawyer who recovers a fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *See, Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Auto Lite Co.*, 396 U.S. 375, 392-93 (1970). This is commonly referred to as the common fund doctrine. The purpose of the common fund doctrine is to avoid unjust enrichment: "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it*." In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (hereafter WPPSS; *see also State, Dept. of Human Resources, Welfare Div. v. Elcano*, 794 P.2d 725, 726, 106 Nev. 449, 452 (Nev. 1990) (recognizing attorney fee recovery under the common fund doctrine under Nevada law); *Shuette*

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

*v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 549, 121 Nev. 837, 864–65 (Nev. 2005) (same). The fairest way to calculate a reasonable fee when contingency fee litigation has produced a common fund—and the way that best promotes efficiency in litigation—is by awarding Class Counsel a percentage of the total fund. *See, e.g., Blum*, 465 U.S. at 900 n.16; *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. Cal. 1990) (common fund fee is generally "calculated as a percentage of the recovery"); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

The percentage-of-recovery method is most appropriate where, as here, the settlement results in a true common fund. *Laguna v. Coverall North America Corp.*, 753 F.3d 918, 922 (9th Cir. 2014). The "'recognized advantages of the percentage method'" include "'relative ease of calculation,' which reduces the burden on the court, 'alignment of incentives between counsel and the class,' and 'a better approximation of [private] market conditions'" in contingency-fee litigation. *Kang v. Wells Fargo Bank, N.A.*, No. 17-cv-06220-BLF, 2021 WL 5826230, *16 (N.D. Cal. Dec. 8, 2021); *see also In re Activision Sec. Litig.*, 723 F. Supp. at 1375 (N.D. Cal. 1989); *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) (recognizing a "recent ground swell of support for mandating a percentage-of-the-fund approach in common fund cases"); *Camden I Condominium Ass'n. v. Dunkley*, 946 F.2d 768, 773 (11th Cir. 1991) ("[E]very Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund basis."). The percentage method has long been the "dominant" method of determining fees in cases like this one, in which counsel's efforts generated a non-reversionary cash settlement fund in a fixed amount for the benefit of the class. *In re Omnivision Techs.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2007) (Conti, J.) (citing *Vizcaino*, 290 F.3d at 1046; *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311; *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). Accordingly, Class Counsel's requested fees and costs should be analyzed under the common fund doctrine.

///

///

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

1.     <u>Class Counsel's request for one-third of the total Settlement fund is fair, reasonable, and adequate.</u>

Fee awards in common fund cases typically range "from 20 to 50 percent of the common fund created." *See* Newberg § 14:6 (4th ed. 2008). "No general rule can be articulated on what is a reasonable percentage of a common fund. Usually, 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." Newberg § 14:6 (4th ed. 2008) ("Empirical studies show that, regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

State and federal courts applying the percentage-of-recovery method frequently award 33-1/3% of the common fund. *See, e.g., In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming award of 33%); *Jane Roe, et al. v. SFBSC Management, LLC, et al.*, 2022 WL 17330847, at *19 (N.D. Cal., 2022) (awarding 33% of common fund); *see also Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) (empirical studies show that California fee awards generally average around one-third of the recovery).[6] The Ninth Circuit identified five factors relevant to determining whether a particular percentage fee is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the complexity of the case, the skill required and the quality of work performed by plaintiffs' counsel; (4) the contingent nature of the fee and the financial burden carried by plaintiffs' counsel; and (5) awards made in similar cases. *Vizcaino*, 290 F.3d at 1048-50.[7] Applying the *Vizcaino* analysis, the requested one-third fee is reasonable

---

[6] *Accord Rodriguez v. Nike Retail Servs., Inc.*, No. 14-cv-01508-BLF, 2022 WL 254349, *5-*6 (N.D. Cal. Jan. 27, 2022); *Moreno v. Capital Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-cv-07087- DMR, 2021 WL 4133860, *4-*6 (N.D. Cal. Sept. 10, 2021); *Chavez v. Converse, Inc.*, No. 15-CV- 03746-NC, 2020 WL 10575028, *5-*6 (N.D. Cal. Nov. 25, 2020); *Greer v. Dick's Sporting Goods., Inc.*, No. 2:15-CV-01063-KJM, 2020 WL 5535399, *11 (E.D. Cal. Sept. 15, 2020); *Jordan v. Michael Page Int'l, Inc.*, 2020 WL 4919732, *8-*10 (C.D. Cal. Jul. 2, 2020); *Carlin v. DairyAmerica, Inc.*, 380 F.Supp.3d 998, 1018-23 (E.D. Cal. 2019); *In re Lidoderm Antitr. Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695, *1 (N.D. Cal. Sept. 20, 2018); *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD, 2017 WL 2214936 (E.D. Cal. May 19, 2017) (all awarding one third under *Vizcaino*).

[7] While the Ninth Circuit has established a "benchmark" fee of 25% for common fund cases, which a district court may increase or decrease if warranted in a particular case, *see Six Mexican Workers*, 904 F.2d at 1311 (9th Cir. 1990), there is no such benchmark under Nevada law.

---

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

under the circumstances of this case. Here, Plaintiffs have addressed the first three factors in the preceding analysis. *See* (1) results achieved, at §IV.C.4, (2) risks of litigation, at §IV.C.2 and 3, and (3) complexity, skill, work performed, at §IV.C.2, 3, and 7. Plaintiffs address the fourth and fifth factors here.

a.    *The contingent nature of the fee and the financial burden carried by Class Counsel.*

The attorneys at Thierman Buck, LLP have dedicated their practice to representing employees, predominantly in wage and hour class actions, for the past two decades. *See* Jones Dec., ¶¶36-39. Plaintiffs' Counsel are representing Plaintiffs and the Class on a contingency fee basis. *Id.,* ¶37. Counsel's agreement with the named Plaintiffs in this case provided for an attorneys' fee award of up to 33.3% of the recovery as approved by the court, plus costs. *Id.* Thierman Buck, LLP operates on a contingency fee basis. *Id.,* ¶38. While our firm has been successful in many actions, this is not always true. *Id.* Hourly-paid attorneys get compensated for all their hours that they invest in a case. *Id.* Contingency fee attorneys do not. *Id.* Contingency fee attorneys must be successful in more cases than they are unsuccessful, or they will cease to exist, and Plaintiffs like the ones in this case will have nowhere to turn.

Because most of the cases that we litigate are collective and/or class action cases, we are frequently required to pay significant costs in furtherance of the litigation and never recover those costs. *Id.,* ¶39. We are also not able to recover the amount of attorney time invested in losing cases. *Id.,* ¶39-43, see discussion of cases in which Thierman Buck, LLP has been unsuccessful. Attorneys should be "reward[ed]" "for taking the risk of non-payment by paying them a premium … for winning contingency cases," thereby "assuring competent representation for plaintiffs who could not afford to pay on an hourly basis …." *WPPSS*, 19 F.3d at 1299-1300. What is more, Class Counsel incurred $32,951.61 in out-of-pocket litigation costs. *Id.,* ¶¶49-51. "This substantial outlay, when there [was] a risk that none of it [would] be recovered, further supports the award of the requested fees." *Omnivision*, 559 F. Supp. 2d at 1047. "A higher-than-benchmark award exists to reward counsel for investing "substantial time, effort, and money, especially in light of the risks of recovering nothing." *Carlin*, 380 F.Supp.3d at 1021 (quoting

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

*WPPSS*, 19 F.3d at 1299-300); *see also Vizcaino*, 290 F.3d at 1051 ("[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.").[8]

For over four years Class Counsel has prosecuted this case on a contingency fee basis while advancing all labor and costs for the benefit of the 9,617 Class Members. In total, Class Counsel have invested $461,627.50 of their own labor plus the $32,951.61 in litigation costs with no guarantee whatsoever of any recovery. *Id.,* ¶¶45-46, 50. The attorney-client agreements signed by Named-Plaintiffs, and agreed to by Opt-In Plaintiffs provide that Class Counsel retains the right to seek up to 33.3% of the total recovery. *Id.,* ¶37. And the Settlement Notice to Class Members that was approved by this Court includes the amount of fees sought by Class Counsel and provides the opportunity for Class Members to voice their opinion as to the appropriateness of Class Counsel's fee request prior to final approval, resulting in only a single objection. Accordingly, the contingent nature of the representation justifies the fee requested. *See*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376-77 (9th Cir. 1993) ("Class counsel, however, have the case on a contingency. Moreover, it is a double contingency; first, they must prevail on the class claims, and then they must find some way to collect what they win.").

### b.    *Awards in comparable cases.*

In other wage and hour cases, class counsel was awarded at least one third of the common fund. *See, e.g.*, *Small v. University Med. Cntr. of So. Nevada,* 2019 WL 3063509 (D. Nev. 2019) (FLSA only class on behalf of 586 Opt-Ins settled for $4.25 and granting 33% attorney fees); *Santiago v. NorthBay Healthcare Corp, et al.*, Case No. 2:20-cv-01385-MCE-AC (E.D. Cal.) (FLSA and California state law for electronic medical record (EMR) charting, settled pre-

---

[8] As recently observed in *In re Nat'l Collegiate Athletic Ass'n*, 2017 WL 6040065 at *4: "Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work." *Ching v. Siemens Indus.*, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) (emphasis added). "This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino II*, 290 F.3d at 1051 (emphasis added). And "[c]ontingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

THERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

conditional certification for $7,500,000 on behalf of 4,547 persons and granting 33% fees); *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of 33% of $12 million common fund); *see also In re Heritage Bond Litig*, 2005 WL 1594403, at *18, n.12 (C.D. Cal Jun. 10, 2005) (noting that more than 200 federal cases have awarded fees higher than 30%). Accordingly, Class Counsel's fee request of 33% of the common fund is reasonable.

### 2.    The requested fee is reasonable under a lodestar crosscheck.

Generally, a district court is "not required" to conduct a lodestar cross-check to assess the reasonableness of a fee award. *See In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 748 (9th Cir. 2017). A district court may, however, elect to perform such a check to confirm "the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. Even a pure lodestar-based fee award does not require mathematical precision. *Mendenhall v. NTSB*, 213 F.3d 464, 472 (9th Cir. 2000); *Kang*, 2021 WL 5826230, *17 ("on a lodestar cross-check this Court is not required to flyspeck the time sheets"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("lodestar cross-check calculation need entail neither mathematical precision nor bean counting").

Class Counsel's lodestar to date is $461,627.50, reflecting 852.70 hours of professional time that have been devoted to this case thus far. *See* Jones Dec. at ¶¶45-46. The lodestar figures are based on hourly rates ranging from $150.00 for legal assistants up to $995.00 for senior partners, which have been accepted by other courts as fair and reasonable.[9]

Based on the current combined lodestar, the proposed fee award of $2,916,666.67 represents a multiplier of 6.3 *Id.,* ¶46. This is reasonable in view of "the substantial risk class

---

[9] These rates fall well within the range approved in other class action litigation in this district in recent years. *See, e.g.*, *Kang*, 2021 WL 5826230 at *17 (approving rates ranging from $350 for associates to $950 for partners and $1,150 for "experienced appellate counsel"); *Lidoderm*, 2018 WL 4620695 at *2 (approving as "reasonable" rates "rang[ing] from $350 to $1,050 for partners and senior counsel, $300 to $675 for associates, and $100 to $400 for paralegals and other litigation staff"); *In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018 WL 4586669, *2 (N.D. Cal. Sept. 24, 2018) (3.5 years ago; approving hourly rates ranging from $275 for paralegals to $1,030 for senior partners as "high but within the range of reasonable"); *NCAA*, 2017 WL 6040065 at *8 (four years ago; approving partner rates from $578 to $1,035; "of counsel" rates from $450 to $900, associate rates from $350 to $635, "staff and law clerk" rages from $175 to $225; "a reputable survey of billing rates" shows rates of "$200 to $1,080" for "attorneys in California in 2015").

counsel faced, compounded by the litigation's duration and complexity"—factors that would have justified a significantly higher multiplier under both federal and Nevada law. *See e.g., Vizcanio,* 290 F.3d at 1051 n. 6 (citing cases approving multipliers as high as 19.6); *Steiner* v. *America Broadcasting Co. Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming award with multiplier of 6.85).[10]

Between now and the close of settlement administration, Class Counsel anticipate devoting additional hours to such tasks as communicating with class members, coordinating with the Settlement Administrator and Defense Counsel, presenting argument at the final approval hearing, and overseeing post-approval distribution. *See* Jones Dec., ¶46. As the litigation continues, the multiplier will become less and less until Class Members have received their checks. In sum, a lodestar cross-check confirms that a fee award of one third of the common fund is reasonable and appropriate in this case.

## VIII.    Class Counsel's Cost and Expenses Actually Incurred for the Benefit of the Class Should Be Approved

In common-fund settlements, Class Counsel are entitled to recover the reasonable expenses incurred in prosecuting the litigation. FRCP 23(h); *Omnivision*, 559 F.Supp.2d at 1047. Class Counsel also seek reimbursement from the settlement fund in the amount of $32,951.61. The Preliminary Order provided for up to $25,000.00 in costs. This is a difference of $7,951.61, which resulted from the second mediation charge of $10,000.00 and expert fees not appearing on Counsel's account until after the filing of the Preliminary Approval motion for litigation costs advanced during the course of this case. *See* Jones Dec. at ¶¶49-50.

These out-of-pocket expenses were incurred for the Class Members' benefit during this litigation and include filing fees, process service fees, mediator's fees, expert witness fees, photocopies, transcripts, document imaging, postage, and research. *Id.,* ¶¶49, 51. Reimbursement is appropriate for the same reasons attorneys' fees should be paid out of the fund: all beneficiaries should bear their fair share of the costs of litigation, and these are the normal costs of litigation

---

[10] *See also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight [8] times the lodestar, and in some cases, even higher multipliers"); *Weiss v. Mercedes-Benz of N. Am.*, 899 F.Supp. 1297 (D.N.J. 1995) (9.3 multiplier), *aff'd*, 66 F.3d 314 (3d Cir. 1995).

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thermanbuck.com www.thermanbuck.com

that clients traditionally pay. Reimbursement of reasonable out-of-pocket expenses that were "incidental and necessary to the representation of those clients" is appropriate. *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994). All of the costs sought were necessary in connection with the prosecution of this litigation and were made for the benefit of the Class and should therefore be approved in full.

## IX.    THE OBJECTION OF MR. WALLACE TONGE SHOULD BE OVERRULED

Simpluris received Class Member and Opt-In Plaintiff Wallace Tonge's Claim form on or about December 12, 2024, and Mr. Tonge filed an objection to the Settlement dated December 18, 2024. (ECF No. 74.)[11] Mr. Tonge's objection is essentially based on two (2) grounds. Class Counsel is sensitive to the issues raised by Mr. Tonge's objection. Indeed, Class Counsel wishes that it could have achieved a greater settlement value on behalf of the entire Class. But the Settlement that was achieved was the result of months of negotiations with the assistance of one of the best wage-hour mediators in the U.S. and only came to fruition following the submission of a mediator's proposal. *See* Jones Dec., ¶¶14-21. In other words, neither Plaintiffs nor Defendant could bridge their differences without the assistance of a mediator who made his own proposal as to what the case should settle for given the legal and factual landscape. *Id.,* ¶¶17-18. Nevertheless, each of Mr. Tonge's objections are addressed in turn.

### A.    The Settlement Recovery Was Reasonably Based on Sampling Data and Eligible Class Members Will Recover Their Fair Share of the Settlement Based Upon their Shifts Worked During the Class Period.

A plan of distribution of class settlement funds must meet the "fair, reasonable and adequate" standard that applies to approval of class settlements.  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL 3648478, at *11 (N.D. Cal. July 7, 2016) (on appeal on other grounds) (citing *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001)); *In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015) (stating same). A plan of distribution that compensates class members based on the type and extent of their

---

[11] ECF No. 74 was filed one-day after the deadline for objections on December 20, 2024, however, the envelope addressed to Class Counsel containing Mr. Tonge's objection was postmarked on December 18, 2024, one day prior to the deadline set forth in the Notice. *See* Jones Dec., ¶36. Thus, Mr. Wallace's Objection is timely.

injuries is generally considered reasonable. *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183, at *8 (N.D. Cal. Nov. 23, 2015) ("Such a plan 'fairly treats class members by awarding a pro rata share' to the class members based on the extent of their injuries.") (Internal citation omitted.)

The allocation of the Net Settlement will be calculated for each Claimant by: (a) dividing the Net Settlement Amount by the total number of Covered Shifts persons in Covered Positions worked for Defendant, and (b) multiplying the result by each individual Claimant's Covered Shifts. ECF No. 72-1, p. 17, §III.B.4. The Settlement further provides, "The number of Covered Shifts worked are appropriately used to calculate payments in this instance due to the impracticality of calculating individualized alleged damages with respect to each individual Class Member." *Id.,* §III.B.5. This is the case because as set forth in the Class Definition each Class Member may or may not have interacted with EPIC off the clock (as demonstrated by the comparison between the EPIC and KRONOS time data), may have received a full lunch period under Defendant's Auto-Deduct Meal Break policy, *and/or* may or may not have had on-call overtime, analysis that Defendant asserted was next to impossible to conduct due to Renown's record keeping system and manpower limitations. *See* Jones Dec., ¶¶ 11-16, 21. Indeed, the calculation of the actual amount of alleged off-the-clock work performed for each of the class members would require enormous resources and cost if even possible given Defendant's assertions. *Id.,* ¶¶14-15. All Class Members will receive a proportionate share of the Settlement fund based upon the total number of shifts they worked for Defendant, which is the single best pro rata method of distribution because it accounts for unpaid wages for each and every workday. This method follows precisely the theories asserted by Plaintiffs—i.e., that they are owed wages for off-the-clock work and inadequate meal periods. *See* §III.B, above; Settlement §III.B.4 and 5. Plaintiffs were able to calculate the average amount of time spent performing unpaid work through their expert's use of the random sampling of data provided by Defendant and based on a weighted average of the wages paid to Class Members. *See* Jones Dec., ¶¶14-16, 20-21. Accordingly, the Parties have negotiated this Settlement by using a sample that consisted of millions of lines of data for a random sampling of Class Members. *Id.*, ¶14.

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

THERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

If Mr. Tonge wanted an exact amount of damages that he believes he is owed (or if he believes he is owed more) then he should have opted out and pursued his claim on an individual basis. Collective and class actions are, by their very nature, not individualized; they require generalized assessment so that over 9,000 individuals can participate. Mr. Tonge's objection is, quite frankly, disingenuous, considering that he has had over four years that he could have sought compensation for what he believes to be an easy claim but failed to ever see an attorney and file a lawsuit.

**B.      Mr. Tonge's Objection to Class Counsel's Fees is Meritless**

Mr. Tonge's objection to Class Counsel's fee request is based on misguided assumptions and fails to acknowledge the excellent result achieved by the Settlement, the contingent nature of Class Counsel's representation, and the risks inherent with complex litigation. First, Mr. Tonge appears to have misunderstood Class Counsel's compensation and the terms of the Settlement. Mr. Tonge states that Class Counsel's fee "reduces the damages to the class participants to a token amount of their actual damages." *See* ECF No. 74 at p. 2. As previously stated, the total exposure on Plaintiffs' off-the-clock claim was approximately $3.4 million. The fund available to the Class was $5.727 million, which is $2.327 million more than the exposure! This additional $2.327 million was in consideration for the hotly contested meal period claim and other claims for relief. But to say that the attorneys' fees amount under the Settlement reduced the amount of damages to class participants would be untrue.[12]

Moreover, as set forth in Plaintiffs' Request for fees based on one-third of the common fund, above, the Attorney-Client Agreement set forth a contingency fee based on a percentage of the recovery, and results in a 6.3 multiplier, which is widely accepted in the Ninth Circuit as fair, reasonable, and adequate for the risk, financial burden, complexity, skill and quality of the work performed by Class Counsel and is not a product of collusion or Class Counsel's attempt to obtain a disproportionate amount of the Settlement.

---

[12] Class Counsel's fee amount is not an amount that can or would ever be distributed to members of the Class. The Class cannot participate in the funds that have been set aside as compensation to Class Counsel. This would create a potential conflict between Class Counsel and members of the Class. Indeed, any amount not awarded to Class Counsel will go back to Defendant under the terms of the Settlement.

In sum, Mr. Tonge's objections should be overruled because the Settlement is fair, reasonable, and adequate to the Class Members and because it reflects a reasoned compromise that takes into consideration the inherent risks in all employment class litigation and, in particular, this action.

## X.    CONCLUSION

Based on the information and reasons provided herein, Plaintiffs respectfully request that the Court grant final approval of the Collective and Class Action Settlement and enter judgment, pursuant to the terms set forth in the Settlement Agreement.

Dated: January 17, 2025                     Respectfully Submitted,

THIERMAN BUCK LLP

By:    /s/ *Leah L. Jones*
Mark R. Thierman
Joshua D. Buck
Leah L. Jones

*Attorneys for Plaintiffs*

**THIERMAN BUCK, LLP**
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com